**NATIONAL CARRIERS' CONFERENCE COMMITTEE et al.**

v.

**Honorable Gerald J. HEFFERNAN, Tax Commissioner of the State of Connecticut.**

**Civ. No. N–77–191.**

United States District Court, D. Connecticut.

Aug. 4, 1978.

Robert J. Engelman, Schwartz & Knight, New Haven, Conn., Benjamin W. Boley, Shea & Gardner, Washington, D. C., for plaintiffs.

Ralph G. Murphy, Asst. Atty. Gen., Hartford, Conn., for defendant.

**RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

NEWMAN, District Judge.

This suit presents the apparently novel issue of whether Congress has preempted a state's power to tax benefits paid by an employee welfare benefit plan by enacting the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* The facts are not in dispute. Plaintiffs are the National Carriers' Conference Committee (NCCC) and the eleven individual members of the committee as fiduciaries of the Railroad Employees National Dental Plan (Dental Plan). The NCCC conducts traditional labor management negotiations with railroad labor organizations on behalf of most of the nation's railroads. It also administers the Dental Plan, which in 1976 paid more than $160,000 in benefits to railroad employees and their dependents in Connecticut.

The parties agree that the Dental Plan is an "employee welfare benefit plan" as that term is defined in Conn.Gen.Stat. § 12–212b (Supp.1978) and is therefore subject to the tax imposed on such plans by Connecticut under § 12–212c. That section requires the "organized group maintaining [the] plan," in this case the NCCC, to pay an annual tax of 2.75% on "the amounts paid as benefits to or on behalf of the residents of" Connecticut during the preceding calendar year. Defendant, the Connecticut Tax Commissioner, is responsible for assessing and collecting the tax. Conn.Gen.Stat. §§ 12–204, 12–205, and 12–212c (Supp.1978).

The Dental Plan is also an "employee welfare benefit plan" as that term is defined in ERISA §§ 3(1) and 4(a), 29 U.S.C. §§ 1002(1) and 1003(a). Plaintiffs' claim that the state's power to tax an ERISA-covered plan is preempted by federal legislation, specifically by ERISA § 514(a), 29 U.S.C. § 1144(a), which provides that the provisions of ERISA "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." Counsel for plaintiff NCCC wrote to the defendant seeking an opinion as to whether this provision preempted the tax imposed on the Dental Plan by § 12–212c. Plaintiffs were advised by a letter dated February 18, 1977, from the Director of Business and Personal Taxes for the State of Connecticut that the tax had not been rendered void by ERISA. The NCCC filed a tax return on February 25, 1977, reporting the benefits paid under the Dental Plan to Connecticut residents during 1976, but indicating that no tax was due on the grounds that the tax sought to be imposed had been preempted by ERISA. Plaintiffs then brought this action for declaratory and injunctive relief against the assessment and collection of the Connecticut tax. Defendant's motion to dismiss was denied in an earlier opinion, *National Carriers' Conference Committee v. Heffernan*, 440 F.Supp. 1280 (D.Conn.1977). After an invitation from this Court to make his views known, the Secretary of Labor filed a brief *amicus curiae* in support of the plaintiffs. The case is now ripe for decision on the parties' cross motions for summary judgment.

The issue is essentially one of statutory construction—does ERISA's preemption provision mean that states cannot tax ERISA-covered plans? As the Supreme Court recently reminded us, "[l]ogic and precedent dictate that '[t]he starting point in every case involving construction of a statute is the language itself.'" *Greyhound Corp. v. Mt. Hood Stages, Inc.*, —— U.S. ——, ——, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239 (1978) (citations omitted). The language of the statute provides, with certain exceptions not relevant here,[1] that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." ERISA § 514(a), 29 U.S.C. § 1144(a). The phrase "any and all" plainly indicates an intention to reach every state statute that fits the description of "relating to" an employee benefit plan. Just as plainly the tax imposed by § 12–212c is such a statute. The statute is not merely a general taxing provision that catches employee benefit plans within its wide sweep. On the contrary, the tax is specifically directed at such plans exclusively, and is distinct from the tax applied to insurance company premiums. See Conn.Gen.Stat. § 12–202 (Supp.1978). Clearly it "relates to" ERISA-covered plans.

◼ The contention that ERISA preemption should be narrowly construed to exclude state taxation is undermined by Congress's specific identification of areas of state legislation that were not to be preempted. These are State laws regulating insurance, banking, or securities and generally applicable criminal laws. ERISA §§ 514(b)(2) and (4), 29 U.S.C. §§ 1144(b)(2) and (4). Moreover, by limiting the exclusion from preemption to criminal laws of

---

1. The preemption provision does not apply to state law that "regulates insurance, banking or securities," ERISA § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A), nor to "any generally applicable criminal laws." ERISA § 514(b)(4), 29 U.S.C. § 1144(b)(4).

*general* applicability, Congress apparently intended to preempt criminal laws directed specifically at employee benefit plans. In the tax area however, where Congress has not excluded even general tax statutes from preemption, a statute specifically directed at an ERISA-covered plan must certainly come within the preemption provision.

Concluding that the meaning of the language is plain obviates the necessity of searching legislative history to divine Congressional intent, *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917), but "an examination of the legislative history dispels any doubt as to the provision's meaning . . . ." *Hewlett-Packard Co. v. Barnes*, 425 F.Supp. 1294, 1297–98 (N.D.Cal.1977), *aff'd*, 571 F.2d 502 (9th Cir. 1978). The relevant legislative history is contained in *Hewlett-Packard Co.*, *supra*, 425 F.Supp. at 1297–1300, and may be briefly summarized here.

When the House of Representatives and the Senate initially passed ERISA, the preemption provisions contained in the House and Senate versions differed substantially from each other and from the present statute. The House version limited preemption to enumerated areas expressly covered by the bill. H.R. 2, 93d Cong., 2d Sess. § 514(a), *reprinted in 3 Legislative History of ERISA Prepared by the Subcommittee on Labor of the Senate Committee on Labor and Public Welfare* (1976) ("Legislative History") 4057–58, passed by House at 120 Cong.Rec. 4782 (Feb. 28, 1974), *reprinted in 3 Legislative History* 3896. The Senate version preempted state laws that "relate to subject matters regulated by this Act or the Welfare and Pension Plans Disclosure Act . . . ." H.R. 2, 93d Cong., 2d Sess. § 699(a), *reprinted in 3 Legislative History* 3820, passed by Senate at 120 Cong.Rec. 5011 (Mar. 4, 1974), *reprinted in 3 Legislative History* 3598. The present, broader language of ERISA § 514(a), 29 U.S.C. § 1144(a), emerged from the conference committee. The conference committee's report states:

Under the substitute, the provisions of title I are to supersede all State laws that relate to any employee benefit plan that is established by an employer engaged in or affecting interstate commerce or by an employee organization that represents employees engaged in or affecting interstate commerce.

H.R.Conf.R. No. 93–1280, 93d Cong., 2d Sess., *reprinted in 3 Legislative History* 4650 *and in* [1974] U.S.Code Cong. & Admin.News at 5162.

Senator Javits, ranking minority member of the Senate Committee on Labor and Public Welfare, explained the change from a limited preemption provision to a more comprehensive one.

Both House and Senate bills provided for preemption of State law, but . . . defined the perimeters of preemption in relation to the areas regulated by the bill. Such a formulation raised the possibility of endless litigation over the validity of State action that might impinge on Federal regulation, as well as opening the door to multiple and potentially conflicting State laws hastily contrived to deal with some particular aspect of private welfare or pension benefit plans not clearly connected to the Federal regulatory scheme.

120 Cong.Rec. 29942 (1974), *reprinted in 3 Legislative History* 4770–71. Similar remarks, indicating that the preemption provision was to be given its widest possible effect, were made by Senator Williams, Chairman of the Senate Labor Committee, 120 Cong.Rec. 2993 (1974), *reprinted in 3 Legislative History* 4745–46, and by Representative Dent, Chairman of the House Labor Committee and senior House conferee. 120 Cong.Rec. 29197 (1974), *reprinted in 3 Legislative History* 4670–71.

Subsequent judicial interpretations of the legislative history reenforce this understanding of the preemption provision's reach. For example, in *Wadsworth v. Whaland*, 562 F.2d 70 (1st Cir. 1977), *cert. denied*, 435 U.S. 980, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978), the court stated:

The legislative history manifests that Congress intended to preempt all state laws that *relate* to employee benefit plans and not just state laws which purport to regulate an area expressly covered by ERISA.

\* \* \* \* \* \*

Congress, therefore, clearly rejected a concept of preemption limited to conflicting or duplicate state law, in favor of applying the principle in its "broadest sense."

562 F.2d at 77 (emphasis in original) (citations omitted). The courts have consistently interpreted the preemption provision in its "broadest sense." See *Standard Oil Co. v. Agsalud*, 442 F.Supp. 695, 706–07 (N.D. Cal.1977), appeal pending; *Bell v. Employee Security Benefit Ass'n*, 437 F.Supp. 382, 385–88 (D.Kan.1977); *Wayne Chemical v. Columbus Agency Service Corp.*, 426 F.Supp. 316, 321 (N.D.Ind.) *aff'd as modified*, 567 F.2d 692 (7th Cir. 1977); [2] *Hewlett-Packard Co., supra*, 425 F.Supp. at 1300; *Azzaro v. Harnett*, 414 F.Supp. 473, 474 (S.D.N.Y.1976), *aff'd without opinion*, 553 F.2d 93 (2d Cir. 1977), *cert. denied*, 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977). But see *Insurers' Action Council v. Heaton*, 423 F.Supp. 921 (D.Minn.1976).[3]

Defendant argues that these cases do not support a ruling that state taxation is preempted by the statute because Congressional concern and subsequent decisions focused on state "regulation," and taxation is not regulation. As noted above, the Connecticut tax "relates" to an ERISA-covered plan and is therefore within the plain meaning of the statute. Moreover, Congress rejected versions of the preemption provision limiting it to areas "regulated" by ERISA in favor of more sweeping language. Although this is a sufficient answer to the defendant's argument, there is another item of legislative history that further undercuts his position.

When the conference committee was considering the House and Senate versions of the bill that eventually became ERISA, it received a recommendation from the administration regarding the scope of the preemption provision. The Secretaries of Labor and Treasury jointly suggested a revised preemption provision which read in part:

Notwithstanding the provisions of this section, a State shall have the authority to prescribe rules and regulations governing the tax qualification and taxation of contributions, distributions or income, of an employee pension plan (including a trust forming a part of such plan) as defined in the Welfare and Pension Plan Disclosure Act.

Administration Recommendations to the House and Senate Conferees on H.R. 2 to Provide for Pension Reform (April, 1974), *reprinted in* 3 *Legislative History* 5050, 5147. Thus, in the face of a formal request to exempt state taxation from the narrow preemption provisions contained in the House and Senate versions of the bill, Congress not only declined the request but adopted far broader language. Although the administration proposal was directed only at state taxation of pension plans, it fairly alerted Congress to the issue of taxing welfare plans as well. Thus Congress, alerted to the taxation issue, chose not to exempt the taxing power from ERISA's broad preemption of state law.

Finally, defendant argues that the preemption provision should be read narrowly because preemption of a state's taxing power is not necessary to accomplish ERISA's objective of insulating plans from potentially conflicting state regulatory requirements. See ERISA § 2, 29 U.S.C. § 1001.

The difficulty with defendant's argument is that the power to tax entails the power to regulate as well. *Cf. McGoldrick v. Gulf Oil Corp.*, 309 U.S. 414, 429, 60 S.Ct. 664, 84

---

**2.** On appeal the Seventh Circuit held that the plan at issue was not covered by ERISA; so the preemption provision did not apply. Thus it had no occasion to consider the preemption analysis. 567 F.2d at 698–99.

**3.** *Insurers' Action Council* was the only case found that read the preemption provision narrowly. 423 F.Supp. at 926. It has been criticized for doing so in *Bell, supra*, 437 F.Supp. at 387.

L.Ed. 840 (1940). In the present action the challenged statute imposes a 2.75% annual tax on benefits paid by employee benefit plans. This contrasts with Connecticut's tax on the premiums received by insurance companies, which is only 2%. Conn.Gen. Stat. § 12–202. This tax structure may operate as an incentive to use traditional insurance, rather than ERISA-covered plans. Although the impact of the tax discrepancy may be only nominal at present, its economic impact is not the measure of its significance. Rather, the discrepancy is illustrative of the potential use of taxation as a means of regulation. Because of that potential, preempting state taxation of ERISA-covered plans is necessary to effectuate Congressional objectives.

█  Plaintiffs are entitled to a judgment declaring that the tax imposed by Conn. Gen.Stat. § 12–212c is void and unenforceable insofar as it applies to employee welfare benefit plans covered by ERISA, and enjoining the defendant Tax Commissioner and his successors and agents from the assessment or collection of such tax.[4]

4. The application of the anti-injunction statute, 28 U.S.C. § 2283, was considered and rejected in this Court's prior opinion, 440 F.Supp. at 1280.