The **FIRESTONE TIRE & RUBBER COMPANY; Virgil E. Arrington,** Plaintiffs-Appellants,

v.

James A. **NEUSSER,** Defendant-Appellee.

Nos. 85–3849, 3985.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 10, 1986.

Decided Feb. 2, 1987.

Patricia M. Ritzert (argued), Akron, Ohio, for defendant-appellee.

John M. Glenn (argued), Joseph C. Weinstein, Buckingham, Doolittle & Burroughs, Akron, Ohio, Steven E. Sigalow, for plaintiffs-appellants.

Before MARTIN, MILBURN and BOGGS, Circuit Judges.

MILBURN, Circuit Judge.

Plaintiffs Firestone Tire & Rubber Company ("Firestone") and Virgil E. Arrington appeal from the summary judgment granted by the district court in favor of the defendant, the tax commissioner of the city of Akron, Ohio. Both plaintiffs appeal the district court's holding that Akron Ordinance 1298–1962, which imposes a municipal income tax, is not preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* In addition, plaintiff Firestone appeals from the judgment of the district court granting defendant's motion for attorney's fees. Because we conclude that the Akron ordinance is not preempted by ERISA and that the district court did abuse its discretion in awarding attorney's fees, we affirm in part and reverse in part.

## I.

Plaintiff Firestone is an employer in the city of Akron. Plaintiff Arrington is an employee at Firestone's Akron facility. Defendant, James A. Neusser, is tax commissioner of the city of Akron.

Pursuant to Ordinance No. 1298–1962, Akron imposes a two percent tax on all income earned by residents of the city, as well as income earned by non-residents for work done within the city. Firestone is required to withhold the tax from the wages and salaries of its Akron employees and to pay the taxes to the city under section 6 of the ordinance.

As part of its employee benefit plan, Firestone has implemented two programs governed by ERISA. The first, a "Tax Efficient Savings Plan," enables an employee to divert up to seventeen percent of his income for each pay period into the Tax Efficient Savings Plan Trust. The first two percent of these contributions is invested in Firestone common stock. Employees making additional contributions may direct that they be invested in any or all of three separate investment funds.

Under the Tax Efficient Savings Plan, an employee may redirect his contributions to the three funds once annually, on January 1. On January 1 and July 1 of each year, an employee may increase or decrease his total contribution to the fund. He may cease all contributions at the end of any month.

An employee may withdraw his balance in the plan only in the event of financial hardship. He may borrow up to one-half of his account balance, within certain limitations, after participating for two years. In the event that an employee leaves the company, he receives the full market value of all savings and investment earnings.

The second ERISA plan implemented by Firestone is a "Health Care Expense Account." This plan permits an employee to direct Firestone to withhold an amount ranging from four dollars ($4.00) to two hundred dollars ($200.00) per month from his gross earnings to be used to reimburse the employee for medical expenses incurred by the employee or his dependents which are not covered by insurance. These contributions are not directed into a separate fund, but are payable from the general assets of the corporation.

These benefit plans were implemented on May 1, 1984, and Firestone requested that defendant tax commissioner rule that the amounts contributed by its employees under the plans are not subject to taxation under the Akron municipal ordinance. In a letter dated April 2, 1984, the tax commissioner ruled that the contributions were subject to taxation.

Firestone appealed the ruling to the City of Akron Tax Board of Review. Plaintiff Arrington joined in the appeal following an August 17, 1984, ruling by the Tax Commissioner. In its memorandum opinion dated August 27, 1984, the Tax Board of Review affirmed the rulings of the Tax Commissioner.

On November 29, 1984, plaintiffs filed the present action seeking a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and injunctive relief pursuant to 29 U.S.C. § 1132(a)(3)(A). In Count I of the complaint, plaintiffs alleged that Akron Ordinance No. 1298–1962 is preempted by ERISA because it relates to an employee benefit plan. In Count II of the complaint, plaintiffs alleged that the employer contributions are not taxable income as defined by the ordinance. On April 18, 1985, the district court dismissed Count II of the complaint. *Firestone Tire and Rubber Co. v. Bodle,* 645 F.Supp. 305 (N.D.Ohio 1985). There is no appeal from this dismissal.

The parties subsequently filed a stipulation of the facts relevant to Count I of the complaint. On August 1, 1985, the district court granted summary judgment in favor of defendant on the ground that the Akron ordinance is a general tax of neutral application which is not preempted by ERISA. On November 15, 1985, the district court granted defendant's motion for attorney's fees pursuant to 29 U.S.C. § 1132(g)(1). In this appeal, two issues are presented for our consideration:

A. whether the district court erred in concluding that Akron Ordinance No. 1298–1962 is not preempted by ERISA; and

B. whether the district court abused its discretion in awarding defendant attorney's fees.

## II.

### A.

In enacting ERISA, "Congress intended to make the regulation of pension plans solely a federal concern." *Authier v. Ginsberg,* 757 F.2d 796, 800 (6th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 208, 88 L.Ed.2d 177 (1985). Consequently, ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). A state law relates to an employee benefit plan, and is preempted by ERISA, if it "has 'a connection with or reference to' an ERISA pension plan...." *Authier,* 757 F.2d at 800 (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)).[1]

---

1. Defendant argues that the Akron ordinance is not preempted because it is not a state law within the meaning of 29 U.S.C. § 1144(c), which provides:

For purposes of this section:

(1) The term "State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. A law of the United States applicable only to the District of Columbia shall be treated as a State law rather than a law of the United States.

(2) *The term "State" includes a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly,* the terms and conditions of employee benefit plans covered by this subchapter.

The Supreme Court has consistently emphasized the broad scope of ERISA's pre-emption provision. In *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), the Court considered whether ERISA preempted a New Jersey statute prohibiting the offset of a retiree's pension benefits by an amount equal to a workers' compensation award for which the retiree was eligible. The Court held that the statute was preempted in that "it 'relate[s] to pension plans' governed by ERISA...." *Id.* at 524, 101 S.Ct. at 1907. Moreover, the Court concluded that the New Jersey statute was not saved from ERISA's broad preemption provision merely because it affected the plan in an indirect manner:

> It is of no moment that New Jersey intrudes indirectly, through a workers' compensation law, rather than directly, through a statute called "pension regulation." ERISA makes clear that even indirect state action bearing on private pensions may encroach upon the area of exclusive federal concern.... ERISA's authors clearly meant to preclude the States from avoiding through form the substance of the pre-emption provision.

*Id.* at 525, 101 S.Ct. at 1907.

The broad interpretation of ERISA's pre-emption provision was reaffirmed in *Shaw*, 463 U.S. at 96–97, 103 S.Ct. at 2899–2900. The Court concluded that "Congress used the words 'relate to' in § 514(a) [29 U.S.C. § 1144(a) ] in their broad sense." *Id.* at 98, 103 S.Ct. at 2900. The Court continued:

> Nor, given the legislative history, can § 514(a) be interpreted to pre-empt only state laws dealing with the subject matters covered by ERISA—reporting, disclosure, fiduciary responsibility, and the like. The bill that became ERISA originally contained a limited pre-emption clause, applicable only to state laws relating to the specific subjects covered by ERISA. The Conference Committee rejected these provisions in favor of the present language, and indicated that the section's pre-emptive scope was as broad as its language....

This court, following the mandate of *Shaw*, has construed ERISA's preemption provision in an expansive manner. For example, in *Authier*, we considered the effect of section 1144(a) upon "a state common-law cause of action for discharge in violation of public policy based on a fiduciary's alleged compliance with ERISA." 757 F.2d at 800. We concluded that, because the plaintiff's claim was based "upon his assertion that he was terminated for fulfilling his obligations under ERISA[,]" and because "ERISA created the public policy element of the common-law action[,]" the Michigan common-law cause of action, under the facts of that case, was preempted by ERISA. *Id.* We have consistently indicated our approval of a broad interpretation of ERISA's preemption provision. *See, e.g., Whitworth Bros. Storage Co. v. Central States, Southeast and Southwest Areas Pension Fund,* 794 F.2d 221, 233–36 (6th Cir.1986); *Blakeman v. Mead Containers,* 779 F.2d 1146, 1151 (6th Cir.1985) (state law contract claim for benefits from an ERISA plan preempted by section 1144); *General Motors Corp. v. Buha,* 623 F.2d 455, 459 (6th Cir.1980) (preemption provision essential to federal regulation under ERISA).

Despite the breadth of the preemption provision, the Supreme Court has indicated that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan."

---

(emphasis supplied). Defendant contends that a law is not state law under 29 U.S.C. § 1144(c)(2) unless it "purports to regulate" a benefit plan.

Other jurisdictions have concluded that a state law is not preempted by ERISA unless it "relates to" and "purports to regulate" a plan. *See, e.g., Martori Bros. Distributors v. James-Massengale,* 781 F.2d 1349, 1356–59 (9th Cir.1986); *Rebaldo v. Cuomo,* 749 F.2d 133, 137 (2d Cir.1984), *cert.*

*denied,* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985). Our conclusion that the Akron ordinance does not "relate to" an ERISA plan makes it unnecessary to reach the "purports to regulate" issue. "As a logical matter, if a state law does not 'relate to' ERISA plans, it cannot 'purport to regulate' them, for 'relates' includes, but is much broader than, 'purports to regulate.'" *Martori Bros. Distributors,* 781 F.2d at 1359.

*Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. Our task in the present case is to determine whether the Akron ordinance falls within this "exception" to section 1144.

Plaintiffs argue that the Akron ordinance has a direct effect on the funding of programs governed by ERISA and that, consequently, the Akron ordinance is preempted. They contend that the decisions of the plan participants as to the amount of their contributions is influenced by the commissioner's attempts to tax those contributions and that this effect was precisely what Congress intended to preclude by ERISA's preemption provision. To support their argument, plaintiffs place heavy reliance on three cases discussing the relationshipp between state tax laws and ERISA's preemption provision. As the district court correctly concluded, all are clearly distinguishable from the present case.

In *National Carriers' Conference Committee v. Heffernan,* 454 F.Supp. 914 (D.Conn.1978), the court held that a Connecticut statute imposing a tax on benefits paid from an employee benefit plan was preempted by ERISA. The court explicitly noted that "[t]he statute is not merely a general taxing provision that catches employee benefit plans within its wide sweep. On the contrary, the tax is specifically directed at such plans exclusively...." *Id.* at 915. In the present case, the tax is not directed at an ERISA plan; it merely taxes income without regard to the employee's decisions concerning plan contributions.

Similarly, in *Northwest Airlines, Inc. v. Roemer,* 603 F.Supp. 7 (D.Minn.1984), the court held that the state tax collector could not levy on the benefit payments from an ERISA plan. As in *Heffernan,* the actions of the tax collector had an obvious and direct effect on the plan. Finally, in *General Motors Corp. v. California State Board of Equalization,* 600 F.Supp. 76 (C.D.Cal.1984), the court held that a state could not impose a tax on insurance premiums because the tax operated as an indirect tax on benefit payments and impeded "the discretion of plan sponsors to fund their plan guarantees through a combination of general assets and excess risk insurance." *Id.* at 80.

Unlike the state law provisions in *Heffernan, Roemer,* and *California State Board of Equalization,* the Akron ordinance is a neutral tax of general application. The ordinance taxes income without regard to the ultimate disposition of that income. Consequently, the present case does not come within the reasoning of those decisions.

Plaintiffs also attempt to support their argument that the Akron ordinance is preempted by relying on recent decisions from the Second and Fourth Circuits which hold that state law claims for severance pay are preempted by ERISA. In *Gilbert v. Burlington Industries,* 765 F.2d 320 (2d Cir.1985), *aff'd mem.,* —— U.S. ——, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986), former employees of Burlington sued the corporation for benefits under Burlington's severance pay policy. Prior to commencement of the lawsuit, the New York Commissioner of Labor ordered Burlington to pay the benefits under section 198–c of the New York Labor Law, which imposes criminal liability on employers who fail to pay wages or wage supplements due employees. *Id.* at 324.

The court held that the plaintiffs' common law and section 198–c claims were preempted by ERISA. It distinguished cases falling within the "remote and peripheral" exception by concluding that "[i]n this case ... the state law claims seeking to enforce the severance pay policy would determine whether any benefits are paid, and *directly affect the administration of benefits under the plan." Id.* at 327 (emphasis supplied). *See also Holland v. Burlington Industries,* 772 F.2d 1140, 1147 (4th Cir.1985) (*Gilbert* rationale applied to preempt state law claims for severance pay), *aff'd mem.,* —— U.S. ——, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986). Once again, the state laws preempted in *Gilbert* and *Holland* had an obvious effect on ERISA

benefit plans. Thus, they do not control our analysis of the present case.

As noted above, the Supreme Court has indicated that state laws having only a tangential effect on an ERISA plan will not be preempted. *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. Thus, in *Rebaldo v. Cuomo,* 749 F.2d 133 (2d Cir.1984), *cert. denied,* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985), the court held that state regulation of hospital rates, which increased the plan's "cost of doing business," was not preempted by ERISA. *Id.* at 138–40. "Where, as here, a State statute of general application does not affect the structure, the administration, or the type of benefits provided by an ERISA plan, the mere fact that the statute has some economic impact on the plan does not require that the statute be invalidated." *Id.* at 139 (footnote omitted).

Similarly, the Ninth Circuit has held that the application of California's anti-discrimination laws to the employment practices of an ERISA plan's trustees is not preempted by ERISA. *Lane v. Goren,* 743 F.2d 1337 (9th Cir.1984). The preemption provision did not apply because the California law affected the plaintiff "only ... in its capacity as an employer, and in a way that all other employers are affected." *Id.* at 1340. Moreover, the court rejected the argument that the state statutes related to an ERISA plan because they increased its costs of doing business:

> That argument does not withstand scrutiny. So too, for example, do state laws and municipal ordinances regulating zoning, health, and safety increase the operational costs of ERISA trusts, but no one could seriously argue that they are preempted. "Some state actions may affect employee benefits plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' a plan."

*Id.* at 1340 (quoting *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21). *Accord Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises,* 793 F.2d 1456, 1465–70 (5th Cir. 1986) (state law fiduciary duty claim affecting relationship between director and shareholder not preempted by ERISA); *American Progressive Life & Health Insurance Co. v. Corcoran,* 715 F.2d 784, 787 (2d Cir.1983) (state regulation of insurance commission affects ERISA plans in too tenuous or remote a manner to warrant preemption); *American Telephone & Telegraph Co. v. Merry,* 592 F.2d 118 (2d Cir.1979) (state law permitting garnishment of pension benefits to enforce alimony and child support not preempted by ERISA).

Although no single test has been formulated for determining when a state law falls within the "remote and peripheral" exception to section 1144, several factors have been used in the analysis. First, a court may ascertain whether the state law represents a traditional exercise of state authority. *See Authier,* 757 F.2d at 800 n. 6; *Rebaldo,* 749 F.2d at 138; *Merry,* 592 F.2d at 121. Absent a clear legislative expression, "[W]e ... must presume that Congress did not intend to preempt areas of traditional state regulation." *Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985).

Application of this factor is not particularly useful in the present case. Defendant argues that we should hesitate to declare the Akron ordinance preempted because, historically, taxation has been considered an attribute of state sovereignty.[2] *See County of Lane v. Oregon,* 74 U.S. (7 Wall.) 71, 76–77, 19 L.Ed. 101 (1869). However, the Supreme Court has, in more recent years, declared state tax laws to be preempted by federal regulation. *See, e.g., Aloha Airlines, Inc. v. Director of Taxation,* 464 U.S. 7, 104 S.Ct. 291, 78 L.Ed.2d

---

**2.** We do not understand defendant to argue that taxation is a traditional attribute of state sovereignty and therefore beyond the reach of Congressional legislative power under the commerce clause. The traditional concept of sovereignty is, of course, no longer the focus of this analysis. *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985); *Dressman v. Costle,* 759 F.2d 548, 557 (6th Cir.1985).

10 (1983). Congress has expressly indicated that state tax laws which "relate to" ERISA plans will be preempted. 29 U.S.C. § 1144(b)(5)(B)(i). Consequently, further analysis is necessary in order to determine whether the Akron ordinance is preempted.

The Fifth Circuit has recently noted that a second factor is appropriate in the analysis of whether a state law falls within the "remote and peripheral" exception to section 1144:

> [T]he courts are more likely to find that a state law relates to a benefit plan if it affects relations among the principal ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries—than if it affects relations between one of these entities and an outside party, or between two outside parties with only an incidental effect on the plan.

*Sommers Drug Stores*, 793 F.2d at 1467. Application of this factor mitigates against a finding that the Akron ordinance is preempted. The income tax affects Firestone employees in their capacity as employees, without regard to their status as participants in an ERISA plan.

A third factor appropriate to this analysis concerns the incidental nature of any possible effect of the state law on an ERISA plan. *See Rebaldo*, 749 F.2d at 138–39; *Lane*, 743 F.2d at 1340; *American Progressive Life*, 715 F.2d at 787. In the present case, any effect on the Firestone ERISA plans is incidental. As the district court concluded,

> Taxing earnings that the employee subsequently directs Firestone to apply to the benefit plans, does not *ipso facto* cause the tax to be related to the plans. There is a clear line between the tax imposed on employee earnings and contributions to the benefit plans. The tax has no connection or reference to the benefit plans. The tax commissioner has not directed any action at the plan contributions or payments. The only conceivable relationship between the tax ordinance and the benefit plans is that the tax is directed at all income, including

income that an employee may direct Firestone to contribute or divert to the benefit plans. However, such a tenuous relationship is insufficient to characterize the Akron Municipal Income Tax Ordinance at issue as relating to the benefit plans either directly or indirectly.

District Court Opinion at 9–10.

■ Application of the foregoing analysis dictates the conclusion that the Akron ordinance is not preempted by ERISA. In reaching this conclusion, we note that the factors discussed above are not exhaustive and that no single factor is dispositive. We hold only that where, as here, a municipality enacts a neutral income tax of general application which applies to employees without regard to their status as ERISA participants, that tax is not preempted by ERISA.

### B.

In the proceedings below, the district court awarded defendant Fifteen Thousand Dollars ($15,000.00) in attorney's fees pursuant to 29 U.S.C. § 1132(g)(1). *Bodle*, 645 F.Supp. at 311. As the parties have stipulated that this amount was reasonable, the only issue presented for our consideration is whether any award constituted an abuse of discretion.

This court has recently considered the appropriate standards for awarding attorney's fees under 29 U.S.C. § 1132(g)(1):

> Several courts have spelled out guidelines for district courts to apply when deciding whether to grant attorney's fees under ERISA. The courts have mentioned the following five factors: (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions. . . .

*Secretary of Department of Labor v. King,* 775 F.2d 666, 669 (6th Cir.1985) (per curiam) (citations omitted). The decision to award attorney's fees is within the broad discretion of the trial court, and "an abuse of discretion exists only when the court has the definite and firm conviction that the district court made a clear error of judgment in its conclusion upon weighing relevant factors." *Id.*

The district court in the present case relied on *Bittner v. Sadoff & Rudoy Industries,* 728 F.2d 820 (7th Cir.1984), in which the court recognized the utility of the factors set forth in *King. Id.* at 828. However, in *Bittner* the court recognized that this test "is oriented toward the case where the plaintiff rather than the defendant prevails and seeks an award of attorney's fees." *Id.* at 829. Consequently, the court concluded that, in cases in which the defendant prevails and attempts to recover attorney's fees, a more useful analysis would focus on whether the position taken by the plaintiff is "substantially justified," and whether "special circumstances" exist which would make a fee award unjust. *Id.* at 830. The court noted that "[t]his standard is consistent with previous articulations of the test under section 1132(g)(1) but is simpler and more definite." *Id.*

Although the Seventh Circuit indicated that the five-factor test set forth in *King* is oriented toward the case in which the winning plaintiff requests attorney's fees, other circuits have utilized these factors in considering a defendant's request for attorney's fees. *See, e.g., Gray v. New England Telephone & Telegraph Co.,* 792 F.2d 251, 257–59 (1st Cir.1986); *Paddack v. Morris,* 783 F.2d 844, 846–47 (9th Cir.1986); *Evans v. Bexley,* 750 F.2d 1498, 1500 (11th Cir.1985); *Gordon v. United States Steel Corp.,* 724 F.2d 106, 108–09 (10th Cir.1983).

Our review of the present dispute in light of the factors enumerated in *King* indicates that the district court abused its discretion by awarding attorney's fees to the defendant. With regard to the first factor, bad faith or culpability, we note that the affidavit of plaintiff's attorney indicates his belief that his client was justified in insti-

tuting litigation on this matter. Moreover, the fact that Firestone was attempting to protect its employees from what it believed was an unwarranted invasion of its benefit plans by the city of Akron also supports the conclusion that Firestone was not culpable.

The fourth *King* factor is inapplicable to the present case because the city clearly was not attempting to confer a common benefit upon plans' participants. The third factor, deterrence of similar conduct, militates against a fee award because such an award may deter other employers from protecting plan participants from state action which does run afoul of ERISA's broad preemptive scope. In any event, consideration of both of these factors is "more relevant to the question of whether attorney's fees should be awarded to ERISA plaintiffs than to ERISA defendants." *Chicago Painters and Decorators Pension, Health and Welfare, and Deferred Savings Plan Trust Funds v. Karr Brothers, Inc.,* 755 F.2d 1285, 1292 (7th Cir.1985).

The fifth factor, which requires examination of the relative merits of the parties' contentions, also militates against an award of fees. The present case involves an important, complex question of first impression. "The issues involved are of recent origin, certainly are not free of doubt and are quite complex. The action of the [plaintiffs] in precipitating the action was necessary and entirely reasonable." *United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada Local 198 AFL–CIO Pension Plan v. Myers,* 488 F.Supp. 704, 716 (M.D.La.1980), *aff'd,* 645 F.2d 532 (5th Cir.1981). *See United Independent Flight Officers, Inc. v. United Airlines, Inc.,* 585 F.Supp. 1206, 1208–09 (N.D.Ill.1984) (award of attorney's fees denied when plaintiff "capably raised a series of complex legal issues in an area of law noted for a dearth of legal precedent.").

Finally, we conclude that consideration of the parties' relative ability to pay does not justify an award of fees. Although Firestone clearly possesses the ability to pay, this factor alone should not be disposi-

tive when examination of all other relevant factors indicates that fees should not be awarded.

We note that the five-factor test set forth in *King* "is a flexible one, developed so as to give guidance to courts in interpreting the discretion to be exercised under the statute." *Gray*, 792 F.2d at 258. Not all of the factors will be relevant in a given case, and no single factor is necessarily dispositive. *See, e.g., Gray*, 792 F.2d at 258; *Carpenters Southern California Administrative Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir.1984).

█ In the present case, we conclude that the district court abused its discretion by awarding defendant attorney's fees. Although all of the relevant factors dictate this conclusion, we are particularly influenced by the fact that the present case involves complex issues of first impression. Accordingly, the judgment of the district court with respect to the award of attorney's fees is reversed.

### III.

For the reasons stated above, the judgment of the district court is AFFIRMED in part and REVERSED in part.