The **LIBERTY CORPORATION, as Sponsor and Administrator of The Liberty Corporation Medical Benefits Plan,** Plaintiff,

v.

**NCNB NATIONAL BANK OF SOUTH CAROLINA as Personal Representative for the Estate of John M. Bristow,** Defendant.

Civ. A. No. 7:91–662–20.

United States District Court,
D. South Carolina,
Spartanburg Division.

March 18, 1992.

G. Randall Taylor, Spartanburg, S.C., R. David Black, Greenville, S.C., for plaintiff.

Edward R. Cole, Spartanburg, S.C., for defendant.

## ORDER

HERLONG, District Judge.

This matter is before the court on cross motions for summary judgment by the plaintiff, Liberty Corporation ("Liberty"), and the defendant, NCNB National Bank

of South Carolina ("NCNB"). The parties agree that there are no disputes of material facts.

On October 21, 1989, Mr. and Mrs. John M. Bristow were traveling in their automobile when it was hit by a dump truck in Charlotte, North Carolina. Mr. Bristow ("Bristow") suffered injuries which caused his death about ten days after the accident.

At the time of the accident, Bristow was an employee of Liberty Life Insurance Company and was covered by a group health plan administered by Liberty. Liberty paid Bristow's medical expenses from the accident.

The plan contained a subrogation provision by which Bristow would be obligated to repay Liberty for any amount of the medical expenses recovered from a third party. After Bristow's death, Liberty entered into a second reimbursement agreement with the personal representative of Bristow's estate, NCNB.

The South Carolina Probate Court for the County of Spartanburg found that the North Carolina Wrongful Death Act applied because the accident occurred in North Carolina. That act provides in part:

> At the termination of the action, any amount recovered shall be applied first to the reimbursement of the estate for the expenses incurred in pursuing the action, then to the payment of the attorneys' fees, and shall then be distributed as provided in this section. The amount recovered in such action is not liable to be applied as assets, in the payment of debts or legacies, except as to burial expenses of the deceased, and reasonable hospital and medical expenses not exceeding one thousand five hundred dollars ($1,500) incident to the injury resulting in death; . . . .

N.C.Gen.Stat. § 28A–18–2 (Supp.1991).

NCNB, as personal representative for Bristow's estate, pursued a claim for wrongful death which was settled for One Million, Five Hundred Thousand Dollars ($1,500,000).[1] NCNB offered One Thousand, One Hundred Sixty Dollars ($1,160) to Liberty as the amount owed under the subrogation clause and reimbursement agreement. This is the statutory maximum for hospital and medical expenses of One Thousand, Five Hundred Dollars ($1,500.00) less a pro rata share of the costs of pursuing the wrongful death claim.[2]

Liberty paid medical bills totaling Ninety–Three Thousand, Eight Hundred Twenty–Nine Dollars and Fifty Cents ($93,-829.50). Liberty seeks to recover that amount less a pro rata share of the costs of pursuing the wrongful death claim. Therefore, Liberty seeks reimbursement from NCNB in the amount of Seventy–Two Thousand, Five Hundred Sixty–One Dollars and Seventeen Cents ($72,561.17).

Liberty brought this action asserting two causes of action. The first cause of action seeks a declaration that the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA"), preempts the North Carolina Wrongful Death Act to the extent that it deprives Liberty of the subrogation right of the plan. This claim also seeks enforcement of the subrogation rights in the plan. The second cause of action is for breach of contract. Liberty asserts that NCNB breached the reimbursement agreement that it entered after Bristow's death.

■ The court finds that North Carolina law governs any recovery by Bristow or his estate. It is well settled in South Carolina that the law of the place where the injury was inflicted governs. *Wright v. American Flyers Airline Corp.*, 263 F.Supp. 865, 869 (D.S.C.1967).

■ Liberty asserts that ERISA preempts the North Carolina Wrongful Death Act to the extent that it limits Liberty's subrogation right under the plan. As a general rule, preemption under ERISA is extremely broad. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77

---

1. The matter was settled before a suit was ever filed.

2. The admissions of NCNB show that the share of the costs of pursuing the wrongful death claim is 22.667%.

L.Ed.2d 490 (1983). ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983) (footnote omitted).

The North Carolina Wrongful Death Act does not reference benefit plans governed by ERISA. Liberty argues that the North Carolina Wrongful Death Act "relates to," or has a connection with, Bristow's benefit plan because the application of the act prevents the enforcement of the subrogation provision of the plan.

Liberty cites two cases which held that laws limiting the subrogation rights of a plan were preempted by ERISA. In *Baxter v. Lynn*, 886 F.2d 182 (8th Cir.1989), the Eighth Circuit held that Missouri common law restrictions on subrogation were preempted by ERISA. In *Baxter,* the plan was allowed to exercise the subrogation clause in the plan to recover money paid to the plan participant as medical expenses resulting from an automobile accident.

In *FMC Corp. v. Holliday*, —— U.S. ——, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), the Supreme Court held that a Pennsylvania statute which precluded subrogation of tort claims for automobile accidents by insurance companies and benefit plans was preempted by ERISA.

In each of those cases, however, the plan participant had a right of action to recover money, and the law prevented the subrogation of that right. Under the North Carolina Wrongful Death Act, the plan participant, the deceased, does not have a right of action. The cause of action conferred by the statute never belonged to the deceased. *In re Estate of Below*, 12 N.C.App. 657, 659, 184 S.E.2d 378, 380 (1971). Though the wrongful death statute requires that an action be brought by the personal representative of the decedent's estate, "[i]n receiving the funds paid in settlement of a wrongful death claim a personal representative ... is not acting for the estate but as

trustee for the beneficiaries under the law." *Id.* 184 S.E.2d at 381. Any right Bristow had to recover damages terminated at his death, and his estate never had a claim to recover damages. The estate recovered only the One Thousand, Five Hundred Dollars ($1,500) that the statute allows.

The parties agree that without the wrongful death statute, no one could recover from the wrongdoer. The statute allows the beneficiaries of the decedent, not the decedent's estate, to recover from the wrongdoer. The subrogation clause in the ERISA plan applies only to a right of action of the plan participant. It cannot apply to the right of action or right of recovery of someone other than the plan participant. *See Wahl v. Northern Telecom Inc.*, 726 F.Supp. 235, 242–43 (E.D.Wis.1989). Because Liberty has no subrogation agreement with Bristow's beneficiaries, it is not entitled to any of the money recovered by them.

The plan participant had no cause of action. ERISA does not create a cause of action where none exists. The estate recovered only that which the statute required the beneficiaries to remit to the estate from their recovery. The wrongful death statute in no way affects the plan's subrogation rights to the money recovered by the estate. Therefore, the North Carolina Wrongful Death Act does not "relate to" the benefit plan governed by ERISA, and the Act is not preempted by ERISA.

■ The court also finds that even if the North Carolina Wrongful Death Act did "relate to" the plan, the Act falls within the "remote and peripheral" exception to ERISA preemption. The Supreme Court has recognized that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983).

Though the Fourth Circuit has noted the "remote and peripheral" exception in *Powell v. Chesapeake & Potomac Telephone Co.*, 780 F.2d 419, 421 (4th Cir.1985), *cert.*

*denied* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986), it has not stated a test for the application of the exception. In *Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550 (6th Cir.1987), the Sixth Circuit found that three factors had been used in analyzing whether the exception was met. These factors are:

(1) Whether the state law represents a traditional exercise of state authority;

(2) Whether the state law affects the relations among the employer, the plan, the plan fiduciary, and the plan beneficiaries, rather than the relations between one of those entities and an outside party, or between two outside parties; and

(3) Whether the state law's effect on the ERISA plan is incidental.

*Id.* at 555–56.

Each of these factors favors the application of the exception. First, the recovery of damages for tortious acts, and more specifically the creation of, and limitation on, wrongful death claims is traditionally within the authority of the state. Second, the law affects the relations of the heirs of the plan beneficiary and a third party, the wrongdoer. Third, the effect on the plan is entirely incidental because the law applies whether the deceased is covered by a benefit plan or not.

It has been noted also that "[w]here ... a State statute of general application does not affect the structure, the administration, or the type of benefits provided by an ERISA plan, the mere fact that the statute has some economic impact on the plan does not require that the statute be invalidated." *Id.* at 555 (*quoting Rebaldo v. Cuomo*, 749 F.2d 133 (2d Cir.1984), *cert. denied* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985)). For these reasons, even if the wrongful death statute did "relate to" the benefit plan, the court would hold that it falls within the "remote and peripheral" exception, and ERISA would not preempt the North Carolina Wrongful Death Act.

Liberty also asserts a breach of contract claim. Liberty asserts that NCNB has breached the reimbursement agreement that it entered after Bristow's death. The agreement requires the estate to reimburse Liberty for the medical expenses from money collected from a wrongdoer.

Since the North Carolina Wrongful Death Act applies, NCNB has not breached the agreement. The estate received only One Thousand, Five Hundred Dollars ($1,500). NCNB has offered to pay that amount less the pro rata share of the cost of pursuing the wrongful death claim. It has offered to pay to Liberty the maximum allowed by the law. Therefore, it is

ORDERED that NCNB's motion for summary judgment is hereby granted.

IT IS SO ORDERED.