**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND THE AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW, et al., Plaintiffs,**

v.

**LORAL CORPORATION, et al., Defendants.**

**No. 5:92 CV 2391.**

United States District Court, N.D. Ohio, Eastern Division.

Jan. 12, 1995.

Betty E. Grdina, Bobulsky & Grdina, Ashtabula, OH, for plaintiffs.

Edward C. Kaminski, Buckingham, Doolittle & Burroughs, Akron, OH, Carol MacKenzie, Alan Pearl, Pearl & MacKenzie, Westbury, L.I., NY, for defendants.

### MEMORANDUM OPINION AND ORDER

DOWD, District Judge.

Before the Court is the plaintiffs' motion for declaratory judgment, permanent injunction, damages and attorney fees. Defendants have filed briefs in opposition and plaintiffs have filed their reply. For the reasons and in the manner discussed below, the motion is granted.

1. Labor Management Relations Act, 29 U.S.C. § 141, *et seq.*

2. Counts III, IV, VI, and VIII were completely dismissed; Counts V and VII were dismissed to the extent that they asserted claims of breach of fiduciary duty under ERISA; Count IX was dismissed to the extent that it sought a declaration of alter ego vis-a-vis Loral and ABSC; and Count X was dismissed to the extent that it sought to assert a claim of promissory estoppel on behalf

### I. BACKGROUND

In a Memorandum Opinion date July 16, 1993, the Court narrowed the claims in this case to the following:

—Count I: Section 301 LMRA[1] breach of contract claim by the Union and the Coen Class against Loral Corporation ("Loral");

—Count II: Section 301 LMRA breach of contract claim by the Union and the Hudak Class against Aircraft Braking System Corporation ("ABSC");

—Count V: ERISA breach of plan terms claim by the Coen Class against Loral;

—Count VII: ERISA breach of plan terms claim by the Hudak Class against ABSC;

—Count IX: Section 301 LMRA claim by the Hudak Class for declaratory judgment that ABSC and K & F Industries ("K & F") are jointly and severally liable, that is, alter egos;

—Count X: Promissory estoppel claims of Coen and Hudak, as individuals, against Loral and ABSC.

All remaining parties and claims were dismissed.[2]

Thereafter, on April 20, 1994, 873 F.Supp. 57, the Court ruled on various motions for summary judgment, ultimately entering judgment as follows: (1) in favor of the plaintiffs and against defendant Loral on Counts I and V; and (2) in favor of the plaintiffs and against defendant ABSC on Counts II and VII. Count X was dismissed. Count IX and the issue of damages remained for trial.

On or about June 22, 1994, the plaintiffs, K & F and ABSC entered into a stipulation, without impairing any party's right to appeal, which disposed of any need for trial on Count IX: the parties stipulated, *inter alia,* that K & F would "assume ultimate legal responsibility for compliance with any final judgment providing damages and benefits under the

of the Coen and Hudak *classes.* The dismissal of Count X as to the purported classes was without prejudice to the right of any individual who might have been a member of one of the classes to pursue his or her own rights in a separate lawsuit. In addition, three of the individual plaintiffs (Sciulli, Neidert, and Sprouse) were dismissed, with the Court declining certification of those three classes.

[health insurance] plan for the Hudak class of employees in addition to the responsibility for such benefits by ABSC as set forth in the Memorandum Opinion and Judgment [of April 20, 1994.]" *See* Docket No. 79.[3]

With that stipulation by the parties, only the questions of equitable relief, damages and attorney fees remain. These issues shall be addressed herein.

## II. DISCUSSION

The plaintiffs' motion seeks a permanent injunction "enjoining any further violations of the 1988–1991 labor agreements and restoring to the Plaintiff classes for their lifetimes, at no cost, the benefit levels which were in effect just prior to August 10, 1991, the date the labor agreements expired." Plaintiffs' Motion, pp. 1–2 (footnote omitted). Plaintiffs also seek "make-whole" relief, including all out-of-pocket losses, premium payments, co-payments and other damages. In addition, they seek a declaratory judgment that K & F is jointly and severally liable for ABSC's obligations. Finally, they seek an award of attorney fees under § 502(g) of ERISA.

The defendants argue that a judgment on the merits is sufficient and precludes any need for a permanent injunction. They also argue that attorney fees are not warranted. Finally, K & F and ABSC argue that declaratory relief, if any, must be limited to the terms of the parties' stipulation.

The Court has studied the parties' respective positions and rules as follows on each issue.

### A. Permanent Injunction

■ Plaintiffs are entitled to permanent injunctive relief against defendants Loral, ABSC and K & F. The defendants are enjoined from further violations of the 1988–1991 labor contracts and from future termination or modification of benefits. Plaintiffs are also entitled to have restored to them, at no cost, for the lifetimes of the class members and their respective surviving spouses, the benefits that they enjoyed immediately

prior to the expiration of the 1988–1991 labor contracts; specifically including the following:

(1) restoration of full Medicare B premium reimbursements and elimination of any "cap" on benefits;

(2) restoration of the $1.00 prescription drug co-payment benefit;

(3) restoration of the Medical Necessity Benefits Program; and

(4) cessation of any and all 85%/15% or 80%/20% co-payment requirement which did not exist under the terms of the 1988–1991 labor contracts.

### B. Declaratory Judgment

Based on the parties' stipulation, which does not impair any right of appeal (Docket No. 79), plaintiffs are entitled to a declaratory judgment that K & F, as the ERISA plan sponsor, bears the ultimate responsibility for providing benefits under the plan for the Hudak class in addition to the responsibility for such benefits by ABSC.

### C. Attorney Fees and Expenses

Under 29 U.S.C. § 1132(g)(1), the Court has discretion to award "a reasonable attorney's fee and costs of action to either party." In this case, plaintiffs were required to pursue legal action to enforce their ERISA rights. Therefore, they are arguably entitled to attorney fees and costs.

In *Armistead v. Vernitron Corp.*, 944 F.2d 1287 (6th Cir.1991), the Sixth Circuit held that the broad wording of the ERISA statute "permit[s] the federal courts to devise a common law of fee-shifting." *Id.* at 1303. The court went on to find that the five factors set forth in *Secretary of Dept. of Labor v. King*, 775 F.2d 666 (6th Cir.1985) "are as good a place as any to begin the development of a common law of fee-shifting under ERISA, even if they do not turn out to be the final word on the subject." *Id.* at 1303–04.

■ The *King* court identified the following as factors to consider when exercising

---

3. A signed copy of this document was presented to the Court for approval on or about June 22, 1994. On December 1, 1994, in reviewing the docket, the Court noted that the stipulation had not been filed. Therefore, the Court directed the Clerk to file it.

discretion to award fees and costs under Section 1132(g)(1):

1. the degree of the opposing party's culpability or bad faith;

2. the opposing party's ability to satisfy an award of attorney's fees;

3. the deterrent effect of an award on other persons under similar circumstances;

4. whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and

5. the relative merits of the parties' positions.

*Secretary of Dept. of Labor v. King*, 775 F.2d at 669. Not all of the factors are needed in a given case and no single factor is dispositive. *Armistead v. Vernitron Corp.*, 944 F.2d at 1303–04; *Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550, 558 (6th Cir.1987).

█ Here, although plaintiffs assert to the contrary, the Court does not take the view that the defendants acted in bad faith. The meaning of the labor contracts and the governing case law is not so obvious as to "leap out" at a reader. The Court itself needed to take considerable time to construe the terms of the contracts in light of ERISA and the case law. It is possible (and if an appeal is taken, no doubt the defendants will argue) that the Court is incorrect in its determination of liability. Therefore, it is perfectly conceivable that they reached an entirely good faith interpretation of the agreements and the law which differs from the interpretation reached by this Court and by plaintiffs themselves. This Court will not attribute bad faith to the defendants.

There is nothing in the record to suggest that any defendant is unable to satisfy an award of reasonable attorney fees and expenses. The Court is also of the view that such an award would have the effect of deterring both these defendants and other employers who become aware of such an award from attempting to reduce or eliminate retiree medical benefits in the face of contract language which suggests a contrary intent of the parties. Finally, the Court is of the view

that plaintiffs' was the most sound of the parties' positions.

Under the *King* analysis, this Court concludes in its discretion that plaintiffs are entitled to recover reasonable attorney's fees and expenses. The method proposed for determining the precise amount of attorney fees and expenses is set out in Section III, *infra*.

### D. Make–Whole Relief and Other Damages

Each of the plaintiffs is entitled to be made whole for any health care expenses which he or she may have incurred over and above those which would have been incurred had the benefits not been changed in June of 1992. This is due as a form of contractual damages under Section 301 LMRA and as equitable relief under Section 502(a)(3) ERISA. Make-whole relief shall include:

(1) all portions of unreimbursed Medicare Part B premiums since June, 1992. The Coen class shall be reimbursed for such premiums in excess of $28.60 per month and the Hudak class shall be reimbursed for such premiums in excess of $29.90 per month;

(2) all payments for prescription drug co-payments in excess of $1.00 incurred since June, 1992;

(3) any and all deductibles or co-payments paid which exceeded those under the 1988–1991 contract;

(4) any and all payments to hospitals or medical providers to the extent they would have been paid under the 1988–1991 contract; and

(5) any other out-of-pocket expenses incurred as a result of the changes in coverage.

The method proposed for determining the precise amount of make-whole relief is set out in Section III, *infra*.

### III. MEDIATION

Having determined that the plaintiffs are entitled to awards of make-whole relief and attorney fees, the Court must arrive at a precise dollar figure for each. This virtually always turns into "satellite litigation," some-

thing which the Court, and presumably each party, fervently wishes to avoid.

Aware that the parties have stated that they might be able to amicably work out the dollar amounts for make-whole relief, and hoping that they feel the same about attorney fees,[4] it occurs to the Court that the parties, in light of the varying interests of the plaintiffs, the Union, and the plaintiffs' attorneys, might be well-served by use of a mediation process.[5]

In that light, the parties are directed to inform the Court in a jointly signed letter received by January 27, 1995, whether they wish to utilize the Court's mediation procedure to attempt to resolve the dollar amounts of make-whole relief and attorney fees.[6] *See* Local Rule 7:3.1, *et seq.* If the parties choose to go this route, the Court will enter the appropriate order to initiate the process.[7]

In the event the parties do not wish to utilize the mediation process, the Court will order a briefing schedule on these remaining matters.

IT IS SO ORDERED.

4. As regards attorney fees, the Court points out especially to the plaintiffs the fact that they did not prevail on all claims and as to all parties. Therefore, the Court, if it eventually has to decide an appropriate amount of attorney fees, would take that fact into account. Plaintiffs' counsel is asked to do the same, whether at mediation or in any brief which is filed.

5. The Court will, if it comes to that, decide the issue of the appropriate amounts. However, the Court is also well aware that parties are frequently in a better position to work out an agreement that satisfies everyone. It is simply in the nature of things that, when the Court makes a decision, somebody "wins" and somebody else "loses." Obviously, the result is satisfactory only to the winner. It is preferable for the parties to reach their own agreement through sincere good faith discussions.

6. Obviously, the parties would also have to reach an agreement as to the precise amount of each defendant's liability.

7. The success of this process would undoubtedly depend upon the parties' voluntarily sharing relevant information so that all parties could enter the mediation well-informed as to the actual facts regarding damages and attorney fees. If the parties choose the mediation route, they are asked to inform the Court in the letter due January 27, 1995, how much time, if any, they need to exchange such information. The Court will factor this in when setting the mediation schedule. The parties are asked to assign a high priority to such disclosure so that the mediation can proceed with dispatch.