THIOKOL CORP., Morton International, Inc. (as successors through corporate reorganization to Morton Thiokol, Inc.) and Bee Chemical Company, Plaintiffs,

v.

Douglas B. ROBERTS, in his official capacity as Treasurer of the State of Michigan, and Thomas M. Hoatlin, in his official capacity as Commissioner of Revenue of the State of Michigan, Defendants.

No. 4:90–CV–12.

United States District Court,
W.D. Michigan,
Southern Division.

July 22, 1994.

James H. Geary, Howard & Howard, P.C., Kalamazoo, MI, Patrick R. Van Tiflin, Howard & Howard, Lansing, MI, for plaintiffs.

Richard R. Roesch, Russell E. Prins, Asst. Atty. Gen., Frank J. Kelley, Atty. Gen., Revenue Div., Steven D. Hughey, Daniel Mark Greenberg, Asst. Attys. Gen., Lansing, MI, Dept. of Treasury, State of Mich., Revenue Div.

Russell E. Prins, Steven D. Hughey, Daniel Mark Greenberg, Asst. Attys. Gen., Lansing, MI, for Robert A. Bowman, Treasurer of the State of Mich. and Melvin Vanvorst.

### OPINION RE CROSS MOTIONS FOR SUMMARY JUDGMENT

HILLMAN, Senior District Judge.

Plaintiffs, Thiokol Corporation, Morton International, Inc., and Bee Chemical Company are corporations engaged in business in Michigan. Each plaintiff is subject to the Michigan Single Business Tax (SBT), M.C.L. §§ 208.1–.145. Plaintiffs allege that the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461, preempts Michigan's SBT. Defendants are Douglas B. Roberts (Treasurer of the State of Michigan) and Thomas M. Hoatlin (Commissioner of Revenue of the State of Michigan).

### BACKGROUND

1. *The Michigan Single Business Tax*

The State of Michigan taxes business activity within the state through the Michigan

Single Business Tax (SBT), M.C.L. §§ 208.1–.145. The SBT is imposed on all businesses for the privilege of engaging in business within Michigan. This tax is levied at the rate of 2.35 percent of an adjusted tax base.

Most states tax either business income or sales. The SBT, however, taxes neither business income nor sales, but rather the value a business adds to a product ("value added"). The value added tax base is defined as, "the difference between the value of the product at sale and the cost of goods purchased from other businesses that went into the product." Taxation and Economic Policy Office, Michigan Department of Treasury, Analysis of the Michigan Single Business Tax, 20 (1985).

In Michigan the value added tax base is calculated by summing compensation, depreciation, interest and profits. Further, the compensation component of this calculation specifically includes, "payments to a pension, retirement, or profit sharing plan, and payments for insurance for which employees are the beneficiaries, including payments under health and welfare noninsured benefit plans and payments of fees for administration of health and welfare and noninsured benefit plans." M.C.L. § 208.4(3). All parties agree that these payments, which are included in the computation of the SBT, are payments to ERISA plans.

## 2. *ERISA*

ERISA provides that it shall "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1001(b) of this title." 29 U.S.C. § 1144(a). While Congress created certain exceptions to the preemption rule, Congress specifically stated that nothing in the exceptions, "shall be construed to exempt from subsection (a) of this section—(i) any State tax law relating to employee benefit plans." 29 U.S.C. § 1144(b)(5)(B). Thus, Congress has explicitly said that any "State tax law" which "relates to" an ERISA plan is superseded by ERISA.

Plaintiffs assert that the SBT taxes employer contributions to ERISA plans and thus relates to ERISA. Plaintiffs further argue that ERISA preempts the Michigan SBT or that portion of the SBT which taxes employer contributions to ERISA plans. Defendants argue that the SBT does not tax contributions to ERISA plans but instead taxes value added. As such, defendants argue, the SBT does not relate to ERISA plans and therefore is not preempted. The case now comes before the court on cross motions for summary judgment.

## *DISCUSSION*

### 1. *Standard of Review*

Summary judgment is appropriate when there is no genuine issue as to any material fact. In such cases, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The crux of summary judgment is determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). In making this determination, the court must draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### 2. *ERISA*

ERISA is a comprehensive federal statute designed to promote the interests of employees and their beneficiaries in employee pension and benefit plans. *Shaw v. Delta Air Lines*, 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). Congress enacted ERISA to subject employee benefit plans to a uniform system of federal laws governing disclosure, reporting, standard of conduct, remedies, sanctions, and access to federal courts. Since uniformity could not be achieved if ERISA plans were subject to varying state regulations, Congress included safeguards to preclude abuse and frustration of the comprehensive federal regulation it established. *Ingersoll–Rand v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474

(1990). Prominent among these safeguards is an expansive preemption provision, found at section 514(a) of ERISA, 29 U.S.C. § 1144(a).

Section 514(a) is deliberately expansive and "conspicuous for its breadth." *FMC Corp. v. Holliday*, 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). The preemption provision has been described as being virtually unique among preemption statutes, *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 24, n. 26, 103 S.Ct. 2841, 2854, n. 26, 77 L.Ed.2d 420 (1983), and as "one of the broadest preemption clauses ever enacted by Congress." *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1439 (9th Cir.1990). Under this provision, ERISA supersedes, "any and all State laws insofar as they ... relate to any employee benefit plan." ERISA § 514(a), 29 U.S.C. § 1144(a).

In *Shaw v. Delta Air Lines*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the Court determined that "relate to" should be given a broad common-sense meaning. The *Shaw* Court held that a state law need not be specifically designed to affect ERISA plans in order to be preempted. 463 U.S. at 97, 103 S.Ct. at 2900. Further, "relate to" did not require that a state law must directly relate to the subjects covered by ERISA; any connection may trigger preemption. 463 U.S. at 97, 103 S.Ct. at 2900. Finally, a state law is preempted if it relates to ERISA even if the state law is "consistent with ERISA's substantive requirements" or was enacted to effectuate ERISA's underlying purpose. *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985).

While ERISA preemption is expansive, it is not all encompassing. Many, if not all, state laws could be held to "relate to" an ERISA plan in some form. Indeed, ERISA could become "a legal black hole with an attractive force no state law could resist." *United Wire and Machine Health and Welfare Fund v. Morristown Memorial Hosp.*, 995 F.2d 1179, 1197 (3rd Cir.1993) (Nygaard, J. dissenting).

■ Thus, the *Shaw* Court found that, "some state actions may affect employee ben-

efit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." 463 U.S. at 100, n. 21, 103 S.Ct. at 2901, n. 21. The Supreme Court has consistently applied this standard since its pronouncement some ten years ago. *See Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990); *FMC Corp. v. Holliday*, 498 U.S. 52, 56, 111 S.Ct. 403, 406, 112 L.Ed.2d 356 (1990); *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 829, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836 (1988); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985). The task then is to determine the precise relationship between a state law and an ERISA plan, specifically answering the question of whether the state law affects an ERISA plan in too tenuous, remote or peripheral a manner to "relate to" the plan. *Keystone Charter, Assoc. Builders v. Foley*, 837 F.Supp. 654 (M.D.Pa.1993).

### 3. *The Value Added Tax*

Michigan's SBT is a value added tax. The value added tax (VAT) is a method of taxing business activity commonly used in Europe and Latin America. The VAT, however, has rarely been implemented within the United States. *See* Congressional Budget Office, Effects of Adopting a Value–Added Tax (February 1992). Because the VAT is not commonly understood, I begin with a discussion of the value added tax in general and then turn to the relationship between Michigan's value added tax and ERISA.

### A. *Defining Value Added*

Value added is a measure of the entire economic activity of a business or firm. Specifically, value added can be defined as the increase in the value of goods and services brought about by whatever a business does to them between the time of purchase and the time of sale. James W. Haughey, *The Economic Logic of the Single Business Tax*, 22 Wayne Law Review 1017, 1018 (1976) ("Haughey"). Like a sales tax, a tax on

value added is a tax on actual consumption. Harvey S. Rosen, Public Finance, Second Edition 459–478 (1988) ("Rosen"). In contrast, an income tax is a tax on potential consumption, or actual consumption plus net savings. *Id.*

As a tax on consumption, the VAT is a type of sales tax. Charles E. McLure, Jr., The Value Added Tax: Key to Deficit Reduction? 3 (1987); Congressional Budget Office, Effects of Adopting a Value–Added Tax 1 (February 1992). Unlike the retail sales tax, which taxes the value of a product only at the final sale to consumers, the VAT is collected on all sales, retail or otherwise, within an economy. The VAT, however, taxes only increases in value added to a product between sales. Thus, the VAT is a particular means of collecting a general retail sales tax; collecting a smaller tax in stages as goods and services are produced and marketed rather than at the final sale to consumers. *Id.*

If a general sales tax were levied at each stage of production, it would double tax products; that is, tax the same value more than once. This double taxing is known as the cascading effect. The cascading effect is considered economically inefficient because it re-taxes property previously taxed at prior stages of production and processing. Frederick W. Whiteside, *Taxation,* 71 Kentucky Law Journal 479, 481 (1982–83). By taxing only value added at each stage of production, a VAT avoids the cascading effect, which a general sales tax, if collected at each sale, would incur. Haughey 1018. All VATs, by definition, eliminate the cascading effect. This elimination can be accomplished by three different methods, as discussed below.

### B. *Calculating Value Added*

In general terms, the VAT avoids the cascading effect by subtracting previously taxed costs of materials from sales or revenues. Thus, value added can be expressed as the simple equation:

Value Added = Revenues − Cost of Materials.

*Trinova v. Michigan Dept. Of Treasury,* 498 U.S. 358, 364–65, 111 S.Ct. 818, 824–25, 112

L.Ed.2d 884 (1990). Further, the revenue component of this equation can be more specifically defined. A simple example, borrowed from the Supreme Court's analysis of the VAT in *Trinova* at 364–65, 111 S.Ct. at 824–25, defines revenue. Assume a bakery's sole revenue comes from the sale of bread. The bakery's costs consist of materials (flour, sugar, spices, utilities), labor (baker, sales clerk), capital (building, mixer, utensils, oven), and credit (interest paid on loans). Any excess of revenues over costs represents profits. Thus:

Revenue = Cost of Material + Cost of Labor + Depreciation + Interest + Profit.

By subtracting Cost of Materials from each side of the equation the equation becomes:

Revenues − Cost of Materials = Cost of Labor + Depreciation + Interest + Profit.

Thus,

Value Added = Revenues − Cost of Materials;

and,

Value Added = Cost of Labor + Depreciation + Interest + Profit.

These equations form the basis for three different, but equivalent, methods of calculating the VAT.

First, as identified in the initial equation above, the VAT can be calculated by subtracting the cost of materials from revenues. This method of calculation is known as the "subtraction" method. While seemingly simple, and currently used in Japan, the subtraction method is not widely employed.

Second, a VAT can be calculated using the "addition" method. The addition method is identified in the second equation above. Under the addition method, a producer is required to add up all the components of revenue except for the cost of materials. Thus, a producer sums cost of labor, depreciation, interest, and profit. Like the subtraction method, the addition method is not commonly used. Michigan's SBT, however, uses the addition method to calculate the VAT.

Third, the VAT can be calculated using the "credit" method. Under the credit method, a tax is levied against revenue; that is, the entire sales price of a given product. However, the producer who pays the tax is then issued a credit for the VAT previously paid during production of the product. Thus, while the credit method does not subtract cost of material prior to levying the tax, a credit for taxes previously paid on those ma-

terials is issued to the producer. This credit avoids the cascading effect which would otherwise be inherent in the tax. The credit method, the most commonly used method of computing the VAT, is used throughout Europe.

Regardless which of the three calculation methods is employed (subtraction, addition or credit), the nature and amount of the tax is identical. Each methodology imposes a non-cascading sales tax upon economic activity. In other words, a tax on value added. The method of calculation used does not change the fundamental nature of or the amount of the tax. This is true for other types of taxes as well. For example, an individual income tax taxes total income. Yet, total income can be calculated using a number of different equations such as: Wages + Dividends + Interest + Business Profits + Capital Gains; or, more simply: Actual Consumption + Net Savings. Rosen 348–350. Regardless of the equation used, the result is income.

A simple example makes it clear that the method of calculation does not change the nature of or amount of the tax. Assume, again, that a baker's sole revenue comes from the production of bread. Before the baker produces the bread, however, the farmer grows the wheat and the miller grinds it into flour. For ease of calculation, a value-added tax of ten percent is imposed at all stages of production. As the following table illustrates, under any of the calculation methods, the nature of and the amount of the tax remains the same. In each case, subtraction, addition or credit, the tax liability is the same for the farmer, miller and baker. In addition, the total tax liability is the same. Further, the total tax liability is the same if the entire tax is collected only at the final, retail sale.

### Basic Transactions

| | Farmer | Miller | Baker | Total |
|---|---|---|---|---|
| Sales | 300 | 700 | 1,000 | 2,000 |
| Material | 0 | 300 | 700 | 1,000 |
| Wages, Interest, Depreciation | 200 | 200 | 200 | 600 |
| Profit | 100 | 200 | 100 | 400 |
| Value Added | 300 | 400 | 300 | 1,000 |
| **Subtraction–Method VAT (Sales − Material)** | | | | |
| Sales | 300 | 700 | 1,000 | 2,000 |
| Material | 0 | 300 | 700 | 1,000 |
| Value Added | 300 | 400 | 300 | 1,000 |
| VAT Liability | 30 | 40 | 30 | 100 |
| **Addition–Method VAT (Wages, etc. + Profit)** | | | | |
| Wages, etc. | 200 | 200 | 200 | 600 |
| Profit | 100 | 200 | 100 | 400 |
| Value Added | 300 | 400 | 300 | 1,000 |
| VAT Liability | 30 | 40 | 30 | 100 |
| **Credit–Method VAT (Tax on Sales − Credit)** | | | | |
| Sales | 300 | 700 | 1,000 | 2,000 |
| Tax on Sales | 30 | 70 | 100 | 200 |
| Credit | 0 | 30 | 70 | 100 |
| VAT Liability | 30 | 40 | 30 | 100 |
| **Retail Sales Tax** | | | | |
| Retail Sales | 0 | 0 | 1,000 | 1,000 |
| Tax | 0 | 0 | 100 | 100 |

After a full review, I am satisfied that the SBT is a tax on value added at each stage of production. The SBT is not a tax on the individual components of the calculation method chosen, be it subtraction, addition or credit, but is a particular method of collecting a sales tax. Further, I am satisfied that the method of calculating value added is neither economically nor legally significant.

### 4. *A Direct Tax on Plan Contributions*

■ Plaintiffs assert that the SBT is a tax on contributions to ERISA plans. As such,

plaintiffs argue that the SBT relates to ERISA and should be preempted by ERISA. I am satisfied that plaintiffs' argument fundamentally misinterprets the nature of the value added tax. As discussed above, the VAT is a type of sales tax. It is not a tax on contributions to ERISA plans. The fact that the tax may be calculated, under the addition method, by reference to plan contributions does not change the nature of the tax. Likewise, an individual income tax could be calculated by summing actual consumption, including ERISA plan contributions, plus net interest. This calculation method would not change the fundamental nature of the income tax and thus would not be considered a direct tax on ERISA contributions. Further, the fact that the SBT does not allow for an exclusion or deduction for ERISA plan contributions does not make it a tax on plan contributions.

I conclude that the SBT is not a tax on ERISA plan contributions. Thus, the numerous cases relied upon by plaintiffs to assert that a direct tax on plan contributions is preempted are not relevant. Despite the fact that the SBT is not a tax on plan contributions, it nonetheless would be preempted by ERISA if it relates to ERISA in more than a tenuous, remote or peripheral manner. I now address additional tests to determine if the SBT relates to ERISA.

### 5. *A Neutral Law of General Application*

Some courts have addressed the question of whether a state law relates to ERISA by determining whether the state law is a neutral law of general application. *Firestone Tire & Rubber Co. v. Neusser,* 810 F.2d 550, 556 (6th Cir.1987); *United Wire, Etc. v. Morristown Mem. Hosp.,* 995 F.2d 1179, 1191 (3rd Cir.1993); *Combined Management Inc., v. Superintendent of the Bureau of Insurance of the State of Maine,* 22 F.3d 1, 3 (1st Cir.1994). In *Firestone,* the court determined that a local income tax, imposed by the city of Akron on individual income, was not preempted by ERISA. Firestone argued that because some individuals invested some of their income in ERISA plans, the tax affected that investment and thus was

preempted by ERISA. The Sixth Circuit determined that the tax was only incidental and found that the tax was not preempted by ERISA, in part because, "where a municipality enacts a neutral income tax of general application which applies to employees without regard to their status as ERISA participants, that tax is not preempted by ERISA." Since the Sixth Circuit's pronouncement, other courts have looked to determine whether a state law is both neutral and general.

For example, in *United Wire,* the court determined that a law relates to ERISA if it is specifically designed to affect ERISA plans, if it singles out such plans for special treatment, or if it is predicated on the existence of such plans. 995 F.2d at 1192 (citations omitted). Each factor identified in *United Wire* relates to whether the law is neutral and general. The court in *United Wire* determined that because the statute in question was a law of general applicability which functioned without regard to the existence of ERISA plans, that is it was both neutral and general, the statute did not relate to ERISA. 995 F.2d at 1192.

Other courts, however, have found that state laws can relate to ERISA, and thus be preempted, even if they are neutral laws of general application. For example, in *Morgan Guaranty v. Tax Appeals Tribunal,* 80 N.Y.2d 44, 587 N.Y.S.2d 252, 599 N.E.2d 656 (1992), the court determined that a capital gains tax, which was a neutral tax of general application, was preempted by ERISA as applied to ERISA plans. That court determined that the tax law in question, while both neutral and general, nonetheless affected ERISA plans in more than a tenuous, remote or peripheral manner and thus related to ERISA. *See also Travelers Ins. Co. v. Cuomo,* 14 F.3d 708 (2d Cir.1993); *E–Systems, Inc. v. Pogue,* 929 F.2d 1100 (5th Cir. 1991); *General Motors Corp. v. California State Board of Equalization,* 815 F.2d 1305 (9th Cir.1987); *Birdsong v. Olson,* 708 F.Supp. 792 (W.D.Tex.1989).

The SBT is a neutral tax law of general application, imposed upon all businesses without regard to their status as ERISA plan sponsors. While this fact may support upholding the state law, the above cited cases

illustrate·that it does not conclusively defeat preemption. Courts have repeatedly found that laws, even if neutral and of general application, are preempted by ERISA if they affect an ERISA plan in more than a tenuous, remote or peripheral manner.

### 6. *Additional ERISA Tests*

In addition to determining whether a law is a neutral law of general application, the Sixth Circuit, in *Firestone,* identified three non-exclusive factors which a court should look to when addressing whether ERISA preempts a state law. No single factor is considered determinative. These factors have also been identified and employed, in slightly adapted versions, by other courts. *See Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.,* 793 F.2d 1456, 1465–68 (5th Cir. 1986); *Birdsong v. Olson,* 708 F.Supp. 792, 798 (W.D.Tex.1989). Under the first *Firestone* factor, the court should determine whether the state law is traditionally an area of state authority. 810 F.2d at 555–56. Under the second factor, the court should determine whether the law affects the relationships among the principal ERISA entities. *Id.* Finally, the court should determine whether the effect on ERISA plans, if any, is incidental. *Id.*

Applying the first *Firestone* factor to the case at bar, I am satisfied that the Michigan SBT involves an area of traditional state regulation. As was the case in *Firestone,* however, the first factor is not particularly useful as it does not have any relationship to or impact upon whether the law affects an ERISA plan. 810 F.2d at 555.

Plaintiffs assert that the SBT affects the relationships among ERISA contributors, plans and beneficiaries; the second *Firestone* factor. Plaintiffs argue that if ERISA contributions were exempt from the SBT, employers would be encouraged to contribute more to ERISA plans. Thus, plaintiffs argue, the tax affects the decision of employers as ERISA contributors and affects total money available to ERISA plans and beneficiaries. Plaintiffs' argument is not compelling. Exempting ERISA contributions from the SBT calculation may encourage employers to

invest in ERISA plans. Yet, there are an unlimited number of other potential state actions which would also encourage investment in ERISA. Non-exemption from the tax base does not establish that the SBT affects the relationships between principal ERISA entities. The VAT affects employers in their capacity as employers, without regard to their status as sponsors of ERISA plans. *See Firestone,* 810 F.2d at 556.

I find that the SBT does not affect the relationships among the principal ERISA entities. The SBT is a tax on employers without regard to their ERISA status. The SBT in no way affects the relationships among those employers and any ERISA plan, ERISA administrator or fiduciary, or ERISA plan beneficiary. Similar to the income tax in *Firestone,* the SBT is levied against all employers regardless of whether or not they contribute to an ERISA plan.

The third *Firestone* factor involves determining whether the effect on an ERISA plan is incidental. I am satisfied that Michigan's SBT has only an incidental effect on ERISA plans. Further, this incidental effect is tenuous, remote and peripheral.

The SBT may affect ERISA plans in two ways. First, as mentioned above, because the SBT does not exempt ERISA contributions from the tax base, the SBT may affect total ERISA contributions by employers. As discussed above, the possible effect on potential contributions fails to affect the relationships among ERISA entities. I am also satisfied that the effect on total contributions to ERISA plans is incidental. The SBT is a sales tax directed at all value added and, like the tax in *Firestone,* simply fails to allow for a deduction for plan contributions. The exempting of ERISA contributions from the tax base was the very issue considered and rejected in *Firestone.* Such a tenuous, remote and peripheral relationship is insufficient to characterize the SBT as related to the benefit plans either directly or indirectly. 810 F.2d at 556.

Further, not only is this effect incidental, but is also unavoidable. For example, even if the SBT fully exempted ERISA contributions from the tax base, it could be argued

that the SBT still affected ERISA plans because it did not grant an exemption at 150% of contributions. A 150% exemption would encourage even more investment in ERISA plans. On the other hand, it could be argued that if the SBT did grant an exemption for ERISA contributions it could affect ERISA plans by encouraging contributions. The fact that the effect may be to promote the purpose and goal of ERISA would not save the law from preemption. *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). I find that, while the SBT could minimally affect contributions to an ERISA plan, that effect is tenuous, remote, or peripheral.

The second effect the SBT may have on ERISA plans is due to the fact that the tax reduces the total money available to an employer and thus may reduce contributions to an ERISA plan. This effect is even more remote than the potential effect identified above. This train of logic requires the court to determine that a if a state law places a cost on a business, it thereby affects a business's total profit, thereby reducing the funds a business has available, and potentially causing the business to contribute less to an ERISA plan. If simply imposing a cost upon an employer were enough to establish preemption, ERISA would necessarily preempt all state environmental laws, zoning laws, safety laws, and taxes, to name but a few. *See Combined Management Inc. v. Superintendent of the Bureau of Insurance of the State of Maine*, 22 F.3d 1, 7 (1st Cir. 1994). ("Clearly, any law that increases a company's cost of doing business can be said to affect that business's ability to provide benefits under its welfare benefit plan. This is not the same, however, as imposing burdens on the welfare benefit plan itself.") Without some rational limits, ERISA "could become a legal black hole with an attractive force no state law could resist." *United Wire and Machine Health and Welfare Fund v. Morristown Memorial Hosp.*, 995 F.2d 1179, 1197 (3rd Cir.1993) (Nygaard, J. dissenting). I am satisfied the SBT is not preempted by ERISA merely because it imposes a cost on businesses.

I conclude that the SBT does not affect the relationships among ERISA entities and has, at most, an incidental effect on any ERISA plan. Thus, under the standards set forth in *Firestone* and *Shaw*, I find that the SBT relates to ERISA in only a tenuous, remote or peripheral manner.

### 7. *The SBT's "Reference To" ERISA*

While I conclude that the SBT has no meaningful effect on an ERISA plan or an ERISA entity, that does not end the analysis. Unlike the statute in question in *Firestone*, the SBT specifically "refers to" ERISA plans. At issue before the court is whether that mere reference to, in and of itself, without any finding of effect or relationship, is enough to establish ERISA preemption. Based upon a thorough review of Supreme Court decisions, including the Supreme Court's recent pronouncement in *District of Columbia v. Greater Washington Board of Trade*, —— U.S. ——, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992), on circuit court and district court cases decided before and after *Greater Washington*, and on common sense reasoning, I conclude that a mere reference to ERISA within a state law does not, in and of itself, mandate preemption.

In *Shaw*, the Supreme Court stated, "a law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or *reference to* such a plan." 463 U.S. at 96–97, 103 S.Ct. at 2899–2900 (emphasis added). While a mere reference to ERISA establishes that a law "relates to" ERISA, the law is preempted by ERISA only if it "relates to" ERISA in something more than a "tenuous, remote or peripheral" manner. 463 U.S. at 100, n. 21, 103 S.Ct. at 2901, n. 21. Since that pronouncement, the Court has consistently reiterated this standard. *See District of Columbia v. Greater Washington Board of Trade*, —— U.S. ——, ——, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 (1992); *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990); *FMC Corp. v. Holliday*, 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990); *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 829, 108 S.Ct. 2182, 2185, 100 L.Ed.2d 836

(1988); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985). The Court's standard necessarily establishes a two-part test for laws which refer to ERISA. A law "relates to" ERISA if it has a "reference to" an ERISA plan, but is preempted only if it "relates to" ERISA in something more than a "tenuous, remote or peripheral" manner.

The Supreme Court's latest reiteration of this standard was set out in *Greater Washington.* In that case, the Court began by restating the standard established in *Shaw.* First, the Court acknowledged that a law that refers to ERISA relates to ERISA. —— U.S. at ——, 113 S.Ct. at 583. Second, the Court acknowledged that a law may relate to ERISA in too tenuous, remote or peripheral a manner to mandate preemption. —— U.S. at ——, n. 1, 113 S.Ct. at 583, n. 1. Justice Thomas, writing for the majority, goes on to state, however, that the state law in question in *Greater Washington,* "specifically refers to welfare benefit plans regulated by ERISA and on that basis alone is preempted." —— U.S. ——, ——, 113 S.Ct. 580, 583. Thus, it appears that in *Greater Washington,* the Court overturns their ten year old two-part analysis, replacing it with a one-part bright line rule. This new rule, the rule of the forbidden words, appears to be that if a state law makes any reference to ERISA, the law is preempted, regardless of whether the law relates to ERISA in only a tenuous, remote or peripheral manner. Justice Stevens, in a lone dissent, advises the majority of this result. —— U.S. at ——––——, 113 S.Ct. at 585–588 (dissent of Justice Stevens).

While a single sentence of the majority's opinion in *Greater Washington* appears to overturn the ten year old *Shaw* test, all other evidence, and common sense reasoning, establishes that the Court did not overturn the *Shaw* standard.

First, it is well established that, "courts should not lightly overrule past decisions." *Moragne v. States Marine Lines,* 398 U.S. 375, 403, 90 S.Ct. 1772, 1789, 26 L.Ed.2d 339 (1969). When courts do overturn a previous rule, they usually do so only after clearly articulating reasons for so doing. *See for example Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). The Court in *Greater Washington,* however, fails to acknowledge in any way that it may be directly overturning a ten-year-old standard. In fact, the Court reiterates the *Shaw* test in the very sentence before it purportedly overturns it. While the Court does not acknowledge that it is directly overturning the *Shaw* test, neither does the Court indirectly overturn the *Shaw* test. The Court did not rely on the "mere reference to" reasoning. Instead, there was a finding in *Greater Washington* that the law in question did affect ERISA plans in more than a tenuous, remote or peripheral manner. —— U.S. at ——, 113 S.Ct. at 583. Thus, given the ambiguous nature of the Court's mere reference to language and reasoning, I am satisfied that I must follow the well established precedent set forth in *Shaw.*

Second, since the Court's ruling in *Greater Washington,* the lower courts have continued to require a showing of effect in order to establish preemption. In *United Wire, Etc. v. Morristown Mem. Hosp.,* 995 F.2d 1179 (3rd Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 382, 126 L.Ed.2d 332 (1993) *reh'g. denied,* —— U.S. ——, 114 S.Ct. 651, 126 L.Ed.2d 608 (1993), the court squarely addressed the issue of whether mere reference to ERISA by a state statute was, in and of itself, enough to establish preemption. In that case, as in this one, the court found that the state law in question had no affect on an ERISA plan and thus related to ERISA only in a tenuous, remote or peripheral manner. Given no effect, the court determined that mere reference to ERISA did not mandate preemption. 995 F.2d at 1192. Finding that a state law that referred to ERISA but failed to affect an ERISA plan was without legal consequence, the court gave the following illustration: "Thus, for example, a state statute providing that 'no employer, including an ERISA plan, shall discriminate on grounds of race or gender' would not be preempted despite its reference to ERISA." 995 F.2d at 1192 n. 6.

Though only a year old, numerous cases have disagreed with *United Wire* on its mer-

its. *Travitz v. Northeast Department ILG-WU Health and Welfare Fund; ILGWU,* 13 F.3d 704 (3rd Cir.1994); *Travelers Ins. Co. v. Cuomo,* 14 F.3d 708 (2d Cir.1993); *New England Health Care Emp. v. Mount Sinai Hosp.,* 846 F.Supp. 190 (D.Conn.1994). Reviewing state statutes similar to that in *United Wire,* each of those courts found that the statute affected ERISA plans. In each of those cases, the courts relied upon the finding of effect in determining that the statute was preempted. None of those courts found that ERISA preempted the state statute in question merely because the statute referred to ERISA. In short, courts have continued to find preemption only after a finding of fact that the state statute in question relates to ERISA in more than a tenuous, remote or peripheral manner. In fact, after a thorough search, I have found no case which has found that ERISA preempts a state law merely because the state law "refers to" ERISA.

Third, a bright line, mere-reference-to test forces an unrealistic and illogical game of semantics upon state legislatures, demanding only that they do not use the forbidden words. This rule fails to require any change to the substance of state laws. For example, in the present case, if the state legislature had established a VAT using the subtraction or credit method of calculation, neither of which would specifically refer to an ERISA plan, then the identical tax would not be preempted. As a further example, in *Firestone,* the City of Akron could have mandated a method of calculation for its individual income tax whereby individuals were required to sum total consumption and net interest. *See* Rosen at 348–350, and supra at 677. Such a law necessarily would refer to ERISA as part of the consumption calculation. Despite the fact that the tax would remain an individual income tax, under the bright line test it would be preempted merely because it referred to ERISA.

Finally, under a bright line, mere-reference-to rule, literally hundreds of existing state laws could automatically be preempted by ERISA if challenged. State laws can refer to ERISA in one of two ways. First, they can directly refer to ERISA by using the term ERISA or Employee Retirement Income Security Act of 1974. For example, under M.C.L. § 141.634, a Michigan tax law, self-employed individuals are specifically allowed to deduct "payments made to an individual retirement account established pursuant to the employee retirement income security act of 1974, 29 U.S.C. 1001 to 1381, to the extent provided in section 219 of the internal revenue code." Under the mere-reference-to rule, any state law, such as M.C.L. § 141.634, which specifically refers to ERISA would be preempted. Second, a state law can, as is true in this case, refer to ERISA by describing plans, using language such as "benefits from a retirement or pension system." Any state law that refers to ERISA in a similar manner would also be preempted.

A recent Westlaw search of the text of state statutes (including all 50 states, Puerto Rico, the Virgin Islands, and the District of Columbia) identified 432 state statutes which directly refer to ERISA. (The search, conducted in the STAT–ALL (unannotated) data base, was: te(ERISA or "Employee Retirement Income Security Act")). It is unknown just how many more state laws refer to ERISA only by describing plans. While, perhaps some of the 432 statutes identified as specifically referring to ERISA should be preempted by ERISA, it is illogical to blindly strike down all 432 statutes. When it comes to ERISA preemption, "common sense should not be left at the courthouse door." *Greater Washington,* —— U.S. ——, —— n. 3, 113 S.Ct. 580, 586 n. 3 (Stevens, dissenting); quoting *Schultz v. National Coalition of Hispanic Health and Human Services Organizations,* 678 F.Supp. 936, 938 (D.D.C. 1988).

■ Based on a review of Supreme Court decisions from *Shaw* to *Greater Washington,* of circuit court and district court cases, and based on common sense reasoning, I conclude that a state law is not preempted by ERISA merely because it "refers to" ERISA.

### CONCLUSION

After a thorough review, I conclude that the Michigan SBT is not preempted by

ERISA. This conclusion is based on the following facts.

(1) The SBT is a neutral tax of general application which does not single out ERISA plans for special treatment nor predicate rights or obligations on the existence of such plans.

(2) The SBT does not regulate ERISA plans.

(3) The SBT does not affect ERISA plans or the relationships between, or among, ERISA entities.

(4) The SBT is neither a direct nor indirect tax on employer contributions to ERISA plans. The SBT is a value added tax, akin to a sales tax, which merely does not allow a deduction for ERISA contributions made by an employer.

(5) Any minimal effect the SBT may have on employer contributions to ERISA plans is incidental and unavoidable; such an effect could be found in nearly every state law which regulates business. This incidental effect is tenuous, remote and peripheral.

(6) I have found no case that has held a state law "relates to" and is preempted by ERISA merely because it refers to ERISA. Likewise, I decline to so hold.

Based on all of the above, I am satisfied that the SBT does not "relate to" ERISA and thus is not preempted by ERISA. Accordingly, plaintiffs' motion for summary judgment is DENIED and defendants' motion for summary judgment is GRANTED.