THIOKOL CORPORATION, MORTON INTERNATIONAL, INC. (as successors through corporate reorganization to Morton, Thiokol, Inc.) and Bee Chemical Company, Plaintiffs–Appellants,

v.

Douglas B. ROBERTS, in his official capacity as Treasurer of the State of Michigan, and Thomas M. Hoatlin, in his official capacity as Commissioner of Revenue of the State of Michigan, Defendants–Appellees.

AKZO AMERICA, INC., a Delaware corporation, Akzo Chemicals, Inc., a Delaware corporation, Akzo Coatings, Inc., a Delaware corporation, Akzo Salt, Inc., a Delaware corporation, Beecham, Inc. (TN), a Tennessee corporation, Beloit Corp., a Delaware corporation, BOC Group, Inc., a Delaware corporation, BOC Healthcare Inc., a Delaware corporation, Butler Manufacturing Co., a Delaware corporation, Coca Cola Company, a Delaware Corporation, Georgia–Pacific Corp., a Georgia corporation, Hanischfeger Corp., a Delaware Corporation, Jefferson Smurfit Corp., a Delaware Corporation, Kroger Co., an Ohio Corporation, M–I Drilling Fluids Co., a Texas partnership, May Department Stores Co., a New York corporation, Miles, Inc., an Indiana corporation, Quaker Chemical Corp., a Pennsylvania corporation, Sears Roebuck and Co., a New York Corporation, Timken Company, an Ohio corporation, UpJohn Corporation, a Delaware corporation, and W.R. Grace & Co., a Connecticut corporation, Plaintiffs–Appellees/Cross–Appellants,

v.

REVENUE DIVISION, DEPARTMENT OF TREASURY, STATE OF MICHIGAN; Douglas B. Roberts, in his official capacity as Treasurer of the State of Michigan; and Thomas M. Hoatlin, in his official capacity as Commissioner of Revenue of the State of Michigan, Defendants–Appellants, Cross–Appellees.

Nos. 94–1903, 95–1116 and 95–1171.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 4, 1995.

Decided Feb. 23, 1996.

Patrick R. Van Tiflin (argued and briefed), Howard & Howard, Lansing, MI, for Thiokol Corp., Bee Chemical Co.

Richard R. Roesch, Office of Atty. Gen. of Michigan, Lansing, MI, for Department of Treasury, State of Mich., Revenue Div.

Michael R. Bell, Office of Atty. Gen. of Mich., Daniel M. Greenberg (argued and briefed), Lansing, MI, for Douglas B. Roberts, Thomas M. Hoatlin.

James H. Geary, Patrick R. Van Tiflin (argued and briefed), Michele L. Halloran (briefed), Howard & Howard, Lansing, MI, for Akzo America, Inc., Akzo Chemicals, Akzo Coatings, Inc.

Russell E. Prins, Michael R. Bell (briefed), Office of Atty. Gen. of Michigan, Daniel M. Greenberg (argued), Lansing, MI, for Department of Treasury, State of Mich., for Douglas B. Roberts, Thomas M. Hoatlin.

Before: BROWN, KENNEDY, and GUY, Circuit Judges.

KENNEDY, Circuit Judge.

In this consolidated appeal from divergent District Court opinions, we are required to decide whether § 514(a) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1144(a), pre-empts the Michigan Single Business Tax, Mich.Comp.Laws Ann. § 208.1 *et seq* (West 1986 & Supp.1995). Michigan's Single Business Tax ("SBT") requires taxpayers doing business in Michigan to include within their tax base all compensation, including payments to employee benefit plans covered by ERISA. In *Thiokol Corp. et al. v. Roberts*, 858 F.Supp. 674 (W.D.Mich. 1994) (94–1903), the District Court found that ERISA did not pre-empt the SBT. In *Akzo America, Inc. et al. v. Michigan Dep't of Treasury*, No. 4:93–CV–101, 1995 WL 44043 (W.D.Mich. Jan.13, 1995) (95–1116), the District Court found that ERISA did pre-empt the SBT. We conclude that ERISA does not pre-empt the SBT, and shall reverse in 95–1116 and affirm in 94–1903.

We also affirm the District Court's ruling in *Akzo America, Inc. et al. v. Michigan Dep't of Treasury*, No. 4:93–CV–101, 1995 WL 44043 (W.D.Mich. Jan.13, 1995) (95–1171), that Michigan's 90–day statute of limitations for filing a refund request on the grounds that a tax violates the federal constitution, Mich.Comp.Laws Ann. § 205.27a(6) (West Supp.1995), is not pre-empted by ERISA. Yet we reverse the District Court's holding that this statute of limitations does not violate equal protection or due process, for it lacked jurisdiction to decide these issues.

**I**

Michigan's SBT levies a 2.35 percent tax on businesses' adjusted tax base. The SBT defines the tax base as the sum of a business's compensation to officers and employees, depreciation, interest payments, and profits. The compensation prong of the tax base is based on certain adjustments made to taxable income as defined under the Internal Revenue Code. The SBT includes within the definition of compensation employers' payments to retirement and health benefit plans.[1]

Thiokol Corporation and AKZO America, Inc. are corporations doing business in Michigan. Each corporation sponsors employee benefit plans governed by ERISA and files Michigan SBT returns. Each corporation brought an action in federal court seeking, *inter alia*, declaratory relief in the form of an order finding Michigan's SBT pre-empted by ERISA.

The District Court in *Thiokol* held that because Michigan's SBT has only a tenuous connection with a covered plan, it was not pre-empted by ERISA. It also held that the SBT's mere reference to such plans was insufficient to justify pre-emption absent an effect that was more than tenuous, remote, or peripheral. In doing so, the District Court in *Thiokol* held that *District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992) did not require pre-emption solely on the basis of a reference to contributions to a covered plan.

In contrast, the District Court in *Akzo* held that under *Greater Washington*, once a

---

1. Under Michigan's Single Business Tax, "Compensation" means all wages, salaries, fees, bonuses, commissions, or other payments made in the taxable year on behalf of or for the benefit of employees, officers, or directors of the taxpayers and subject to or specifically exempt from withholding under section 3401 of the internal revenue code. Compensation includes, on a cash or accrual basis consistent with the taxpayer's method of accounting for federal income tax purposes, payments to state and federal unemployment compensation funds, payments under the federal insurance contribution act and similar social insurance programs, payments, including self-insurance, for workmen's compensation insurance, payments to individuals not currently working, payments to dependents and heirs of individuals because of current or former labor services rendered by those individuals, payments to a pension, retirement, or profit sharing plan, and payments for insurance for which employees are the beneficiaries, including payments under health and welfare and noninsured benefit plans and payments of fees for administration of health and welfare and noninsured benefit plans.

Mich.Comp.Laws Ann. § 208.4(3) (West 1995) (footnote omitted).

statute contains any reference to ERISA or to a covered plan it is thereby pre-empted. Having found that Michigan's SBT contained a reference to covered plans, and that *Greater Washington* obviated the need to analyze whether the SBT had more than a tenuous, remote, or peripheral effect on a covered plan, the District Court in *Akzo* held that Michigan's SBT was pre-empted. We review both District Court's grants of summary judgment *de novo*. *City Mgmt. Corp. v. United States Chem. Co.*, 43 F.3d 244, 250 (6th Cir.1994).

The District Court in *Akzo* also held that ERISA did not pre-empt Mich.Comp.Laws Ann. § 205.27a(6) (West Supp.1995), which imposes a 90–day statute of limitations on claims for refunds based on a taxpayer's challenge to the constitutionality of a state tax law. It also held that this statute of limitations does not violate the federal constitutional guarantees of due process and equal protection.

## II

■ ERISA supersedes state laws that "relate to any employee benefit plan" covered by ERISA, and the Supreme Court has noted that "Congress used the words 'relate to' in § 514(a) in their broad sense." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Id.* at 96–97, 103 S.Ct. at 2900. Moreover, a law that refers to or has an connection with an employee plan covered by ERISA is pre-empted "even if the law is not specifically designed to affect such plans, or the effect is only indirect, and even if the law is consistent with ERISA's substantive requirements." *District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 130, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 (1992) (citations and internal quotations omitted). Nevertheless, the Supreme Court has carved out an exception that saves from pre-emption those state laws

that "affect employee benefit plans in too tenuous, remote or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. In the footnote raising this exception, the Court acknowledged the difficulty of determining what state laws fit within this narrow exception. *Id.* Nevertheless, the Supreme Court has continued to cite this footnote and has thus recognized the continuing viability of the *Shaw* exception. *See Greater Washington*, 506 U.S. at 130 n. 1, 113 S.Ct. at 583 n. 1; *New York Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, —— U.S. ——, ——, 115 S.Ct. 1671, 1680, 131 L.Ed.2d 695 (1995), citing *Greater Washington*, 506 U.S. at 130 n. 1, 113 S.Ct. at 583 n. 1.

■ We begin by considering whether the SBT falls within the *Shaw* exception for state laws that have only a "tenuous, remote or peripheral" effect on a plan covered by ERISA. In *Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550 (6th Cir.1987), we considered whether a statute that, like Michigan's SBT, used ERISA plan contributions to calculate the tax base, had more than a tenuous, remote, or peripheral effect on a covered plan. The municipal income tax at issue in *Firestone* imposed a two percent tax on income from work done within Akron, Ohio, and it defined income to include amounts employees contributed to health and savings plans covered by ERISA.[2] In holding that Akron's income tax was not pre-empted, we considered three factors: whether the tax constituted a traditional exercise of state authority; whether it affected relations among the principal ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries—or relations between one of these entities and an outside party; and whether it had any more than a tenuous or peripheral effect on a covered plan. *Firestone*, 810 F.2d at 555–56.

■ Applying the *Firestone* factors to the Michigan SBT, we find that the SBT has, at most, a tenuous, remote, or peripheral effect

---

**2.** The plan at issue allowed employees to divert up to seventeen percent of income each pay period into any or all of three separate investment funds; it also allowed employees to divert up to $200.00 per month for medical expenses not covered by insurance. *Firestone*, 810 F.2d at 551–52.

on an ERISA plan. First, the Michigan SBT falls within an area of traditional state regulation. Although as we noted in *Firestone,* a state law's status as a tax is not dispositive on the issue of whether the law escapes preemption, *see id.* at 555–56, we are mindful that federal courts must give due respect to "the fundamental principle of comity between federal courts and state governments that is essential to 'Our Federalism,' particularly in the area of state taxation." *Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* 454 U.S. 100, 103, 102 S.Ct. 177, 179, 70 L.Ed.2d 271 (1981).

Second, the tax does not affect relations among the principal ERISA entities. The SBT applies to all employers doing business in Michigan whether or not they contribute to ERISA plans. Indeed, the SBT applies to health and pension plans that are not covered by ERISA, as well as those that are covered by ERISA. Thus it is not specifically designed to affect ERISA plans themselves. The SBT affects only the relationship between the employer and the state, not the relationship between the plan and the employer and employees.

Finally, the SBT has only a peripheral effect on an ERISA plan. On this point, it is important to remember that the Supreme Court does not require that state laws have absolutely zero effect on ERISA plans, for this likely would be impossible as a matter of logic or practicality. State property, contract, and tort law all surely have some effect on ERISA plans, but they are not pre-empted. Moreover, the Supreme Court has recognized that state laws of general applicability can have effects on ERISA plans and still escape pre-emption. In *Mackey,* the Court rejected a pre-emption challenge to a state garnishment statute even though

[c]ompliance with the state garnishment procedures subjects the plan to significant administrative burdens and costs. Petitioners are required to confirm the identity of each of the 23 plan participants who owe money to respondent, calculate the participant's maximum entitlement from the fund for the period between the service date and the reply date of the summons of garnishment, determine the amount that each participant owes to respondent, and make payments into state court of the lesser of the amount owed to respondent and the participant's entitlement. Petitioners must also make decisions concerning the validity and priority of garnishments and, if necessary, bear the costs of litigating these issues. Further, as trustees of a multiemployer plan covering participants in several States, petitioners are potentially subject to multiple garnishment orders under varying or conflicting state laws.

*Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 842, 108 S.Ct. 2182, 2192, 100 L.Ed.2d 836 (1988) (Kennedy, J., dissenting); *see also New York Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* —— U.S. ——, ——, 115 S.Ct. 1671, 1680, 131 L.Ed.2d 695 (1995) (noting that because the Court in *Mackey* had held that "a law authorizing an indirect source of administrative cost [on ERISA plans] is not pre-empted, it should follow that a law operating as an indirect source of merely economic influence on administrative decisions, as here, should not suffice to trigger pre-emption either."). Thus a state law of general applicability can have a slight effect on an ERISA plan and still not be pre-empted.

As Judge Hillman's opinion in *Thiokol,* 94–1903, explains in considerable detail, Michigan's SBT is a tax on value added that simply uses an employee's compensation in its calculation of value added. Michigan wrote its value added tax using an addition method of calculating value added. Such a method sums the total of all compensation to employees, officers, directors, plus all fringe benefits, worker's compensation and all the expenses related to personnel, interest payments, profit, and depreciation. Michigan drafted its value added tax using the addition method because taxpayers calculate compensation by making relatively easy adjustments to federal income tax figures. Indeed, Michigan chose the addition method rather than the subtraction method, which is common in European countries, because the addition method entails easier calculations for taxpayers.

Michigan could have written its value added tax using the subtraction method, under which firms would subtract the cost of materials from revenues. Had it done so, the tax would not require any reference to health or pension plans, for it would avoid the use of compensation as a component in arriving at the tax base. Because, as Judge Hillman noted, the result for taxpayers is the same regardless of which way the value added tax is written,[3] the additive method of computing value added taxes does not truly tax the individual components that go into the calculation of value added. Michigan would achieve the same results by simply defining compensation as all expenditures on behalf of employees, officers and directors or by replacing its addition method with a subtraction method of calculating a value added tax base. Paying proper heed to the Supreme Court's admonition that in tax matters courts should consider "substance, not ... form," *see Diedrich v. Commissioner of Internal Revenue,* 457 U.S. 191, 195, 102 S.Ct. 2414, 2417–18, 72 L.Ed.2d 777 (1982), it would appear that Michigan's SBT fits with the *Shaw* exception and is not pre-empted by § 514(a).

## III

■ Thiokol and AKZO argue that even if the SBT has only a tenuous, remote, or peripheral effect on a covered plan, it is still pre-empted because it refers to employee benefit plans, some of which are covered by ERISA. They argue that *District of Columbia v. Greater Wash. Bd. of Trade,* 506 U.S. 125, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992), restricted the *Shaw* exception. Thiokol and AKZO point to language in *Greater Washington* that they claim supports their view that the pre-emption exception for tenuous effect only applies to state laws that have "a connection with" an ERISA plan; thus, they claim, it no longer applies to those that actually "refer to" such a plan.

In *Greater Washington,* after discussing *Shaw* and other cases defining "relates to," the Court stated:

"Section 2(c)(2) of the District's Equity Amendment Act specifically refers to welfare benefit plans regulated by ERISA and *on that basis alone* is pre-empted."

*Thiokol v. Roberts,* 858 F.Supp. 674, 678 (W.D.Mich.1994).

As Judge Hillman's example indicates, value added taxes can be written in different ways, each of which produces the same tax liability. Thus, Michigan's SBT, which follows the addition method and includes within the definition of wages all payments made to health and pension plans, does not truly "tax" such payments; for the statute could be rewritten in a manner that would achieve the exact same result without relying on a compensation component.

---

3. The numerical example cited in Judge Hillman's opinion illustrates graphically how the two methods are interchangeable:

A simple example makes it clear that the method of calculation does not change the nature of or amount of the tax. Assume, again, that a baker's sole revenue comes from the production of bread. Before the baker produces the bread, however, the farmer grows the wheat and the miller grinds it into flour. For ease of calculation, a value-added tax of ten percent is imposed at all stages of production. As the following table illustrates, under any of the calculation methods, the nature of and the amount of the tax remains [sic] the same. In each case, subtraction, addition or credit, the tax liability is the same for the farmer, miller and baker. In addition, the total tax liability is the same. Further, the total tax liability is the same if the entire tax is collected only at the final, retail sale.

Basic Transactions

|  | Farmer | Miller | Baker | Total |
|---|---|---|---|---|
| Sales | 300 | 700 | 1,000 | 2,000 |
| Material | 0 | 300 | 700 | 1,000 |
| Wages, Interest, Depreciation | 200 | 200 | 200 | 600 |
| Profit | 100 | 200 | 100 | 400 |
| Value Added | 300 | 400 | 300 | 1,000 |

Subtraction–Method VAT (Sales—Materials)

|  | Farmer | Miller | Baker | Total |
|---|---|---|---|---|
| Sales | 300 | 700 | 1,000 | 2,000 |
| Material | 0 | 300 | 700 | 1,000 |
| Value Added | 300 | 400 | 300 | 1,000 |
| VAT Liability | 30 | 40 | 30 | 100 |

Addition–Method VAT (Wages, etc. + Profit)

|  | Farmer | Miller | Baker | Total |
|---|---|---|---|---|
| Wages, etc. | 200 | 200 | 200 | 600 |
| Profit | 100 | 200 | 100 | 400 |
| Value Added | 300 | 400 | 300 | 1,000 |
| VAT Liability | 30 | 40 | 30 | 100 |

Credit–Method VAT (Tax on Sales—Credit)

|  | Farmer | Miller | Baker | Total |
|---|---|---|---|---|
| Sales | 300 | 700 | 1,000 | 2,000 |
| Tax on Sales | 30 | 70 | 100 | 200 |
| Credit | 0 | 30 | 70 | 100 |
| VAT Liability | 30 | 40 | 30 | 100 |

Retail Sales Tax

|  | Farmer | Miller | Baker | Total |
|---|---|---|---|---|
| Retail Sales | 0 | 0 | 1,000 | 1,000 |
| Tax | 0 | 0 | 100 | 100 |

*Greater Washington,* 506 U.S. at 130, 113 S.Ct. at 583 (emphasis added). Thiokol and AKZO argue that by using the words "on that basis alone," the Court was announcing a new test under which mere reference in a statute is enough to pre-empt it; that once the law refers to an ERISA plan, it is *ipso facto* pre-empted. In granting AKZO's motion for summary judgment, Judge Bell accepted this position. While acknowledging that footnote one in *Greater Washington* had preserved the *Shaw* exception,[4] Judge Bell concluded that by using the language "connection with," while omitting "refers to," the Supreme Court was indicating that courts should consider whether a statute fits within the *Shaw* exception only when the state law has a "connection with" an ERISA plan, but not when the law actually refers to such plans. Finally, Thiokol and AKZO point to Justice Stevens's dissent in *Greater Washington,* which, they claim, apprised the majority of the broad scope of its holding.

We consider in turn each of the justifications for limiting the *Shaw* exception to "connection with" cases. Ultimately, we conclude that *Greater Washington* does not limit the *Shaw* exception to such cases. Congress sought to pre-empt state laws that have a burdensome *effect* on ERISA plans. When a state law has such an effect on a covered plan, it is pre-empted; when it does not, it is not pre-empted even if it actually refers to ERISA. Interpreting "relates to" as being concerned with state laws' significant effects on covered plans serves Congress's purpose in enacting ERISA, *viz.* to avoid encouraging "employers with existing plans to reduce benefits, [or] those without such plans to refrain from adopting them." *Fort Halifax Packing Co., Inc. v. Coyne,* 482 U.S. 1, 11, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987).

### A

We first consider the significance to attach to the use of the phrase "on this basis alone" in *Greater Washington.* Was the Court, as Thiokol and AKZO argue, announcing a new rule in which the exception is applicable only to statutes that have a mere connection with a covered plan but not to those that actually refer to covered plans?

Thiokol and AKZO's argument attaches undue significance to the Supreme Court's omission of an analysis as to whether the *Shaw* exception applied to the facts in *Greater Washington.*[5] Even though the Court wrote that the Equity Amendment was pre-empted "on this basis alone," the Court had already found that the law would have a significant impact on an ERISA plan:

> By tying the benefit levels of the workers' compensation plan to those provided in an ERISA-covered plan, "the Equity Amendment Act could have a serious impact on the administration and content of the ERISA-covered plan."

506 U.S. at 129, 113 S.Ct. at 583, *quoting Greater Wash. Bd. of Trade v. District of Columbia,* 948 F.2d 1317, 1325 (D.C.Cir. 1991). Since the *Shaw* exception did not apply in *Greater Washington,* we should not infer that the Supreme Court was announcing a new rule denying the applicability of this exception to state laws that refer in a remote or peripheral way to covered plans but otherwise have no effect on such plans. We suggest that only if the exception *could* apply to the facts before the Court would the omission of an analysis of the exception's applicability to instances where the reference is remote, peripheral or tenuous amount to a rejection of its validity in those cases. Moreover, such a *per se* pre-emption rule stands in

---

**4.** The Court preserved the *Shaw* exception in the following language:

> Preemption does not occur, however, if the state law has only a "tenuous, remote, or peripheral" *connection with* covered plans.

*Greater Washington,* 506 U.S. at 130 n. 1, 113 S.Ct. at 583 n. 1 (emphasis added).

**5.** *Greater Washington* retains the *Shaw* exception in a footnote. 506 U.S. at 130 n. 1, 113 S.Ct. at 583 n. 1. The Court places the footnote citing the exception immediately before the sentence

that contains the statement: "Section 2(c)(2) ... specifically refers to welfare benefit plans regulated by ERISA and on that basis alone is preempted." *Id.,* at 130, 113 S.Ct. at 583. After noting that "on that basis alone" it is preempted, the Supreme Court does not consider whether the exception applies. Thus Thiokol and AKZO argue that "on that basis alone" means that mere reference, irrespective of any effect the state law might have on a covered plan, requires preemption.

sharp contrast to past ERISA cases, none of which find pre-emption on the basis of the state law's mere reference to a covered plan. Indeed, when reviewing the vast body of ERISA pre-emption decisions, Judge Hillman found that in those cases striking down state laws because they referred to a covered plan, all involved state laws that had a clearly significant *effect* on such plans. *Thiokol Corp. v. Roberts,* 858 F.Supp. 674, 683 (W.D.Mich.1994). Consequently, we do not believe the Supreme Court's use of the words "on this basis alone" in *Greater Washington* by themselves limit the *Shaw* exception.

**B**

Second, we consider whether the Supreme Court's statement of the *Shaw* exception in *Greater Washington* evinces a new rule limiting the exception to "connection with" cases. *Shaw* itself speaks of pre-emption analysis in terms of the state law's effect on the covered plan: "Some state actions may *affect* employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983) (emphasis added). *Greater Washington* describes the *Shaw* exception differently: "Pre-emption does not occur, however, if the state law has only a 'tenuous, remote, or peripheral' *connection with* covered plans...." 506 U.S. at 130 n. 1, 113 S.Ct. at 583 n. 1 (emphasis added), citing *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. In *Akzo,* Judge Bell found that the Supreme Court chose the words "connection with" because it wanted to limit the *Shaw* exception to "connection with" cases, thereby excluding its application from "refer to" cases. *Akzo America, Inc. v. Revenue Div., Dep't of the Treasury,* No. 4:93–CV–101, 1995 WL 44043 at *2 (W.D.Mich. Jan. 13, 1995).

We are not persuaded that this footnote in *Greater Washington* limited the *Shaw* exception. First, although the Supreme Court's ERISA pre-emption cases may be read as treating "refer to" and "connection with" cases as analytically distinct, *see, e.g., New York Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* —— U.S. ——, ——, 115 S.Ct. 1671, 1677, 131 L.Ed.2d 695

(1995), and thus it could be argued that the Supreme Court was aware of the possible legal significance of using only the words "connection to," we do not believe the Court would take this significant step without discussion and in a case where it had found effect.

The Supreme Court easily could have effected such a significant change in ERISA pre-emption law simply by writing what Thiokol and AKZO interpret it as having written: "when a state law refers to a covered plan, it is pre-empted even if it has only a tenuous, remote, or peripheral effect on such plans." But the Court did not use such language. As we attempt to discern the Court's meaning in *Greater Washington,* we are mindful that the underlying case involves a state's vital need to secure revenue for its most basic operations. Denying the *Shaw* exception's applicability to statutes, like Michigan's SBT, that refer to ERISA but have only a tenuous, remote, or peripheral effect on covered plans would entail so profound a change in ERISA pre-emption law that we believe the Supreme Court would have clearly articulated such a new rule.

Second, the argument that *Greater Washington*'s mention of "connection with" constituted an express rejection of the applicability of the *Shaw* exception to "refer to" cases formalistically places "refer to" and "connection with" into separate and independent categories when both are simply approximations of the same test. Although in its ERISA pre-emption cases the Supreme Court analyzes state laws by first examining whether they refer to a covered plan and, if not, whether they still have some connection with a covered plan, the two categories are not analytically distinct; rather, they are two related methods of determining the fundamental question in ERISA analysis: whether the state law has an impermissible *effect* on a covered plan.

The Supreme Court has noted that in enacting ERISA's pre-emption provision, § 514(a), Congress intended

to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; *the goal was to minimize the*

*administrative and financial burden* of complying with conflicting directives among States or between States and the Federal Government ..., [and to prevent] the potential for conflict in substantive law ... requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.

*New York Blue Cross,* —— U.S. at ——, 115 S.Ct. at 1677 (emphasis added), quoting *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 142, 111 S.Ct. 478, 484–85, 112 L.Ed.2d 474 (1990). Thus Congress sought to minimize the burdensome effects state laws might have on ERISA plans. In the form of § 514(a), Congress sought to protect plans from the effects of state laws by superseding all state laws that "relate to" covered plans.

The Supreme Court's definition of "relates to" in *Shaw*—"A law 'relates, to an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." 463 U.S. at 96–97, 103 S.Ct. at 2900—furthers Congress's intent to protect covered plans from the effects of state law. If "relates to" were defined to include only those state laws that specifically referred to covered plans, it would leave untouched many statutes that do not specifically refer to ERISA plans but still have a very significant effect on such plans. Such a rule would reward clever legislative drafters, who could undermine Congress's effort to protect covered plans from the effects of state laws by deleting the forbidden words and retaining the significant effects.

More importantly, the Court's definition of "relates to" as having a "connection with or reference to" sheds light on the purpose of including "reference to." When the Court strikes down a statute that "refers to" ERISA or a covered plan, it does so not because of the reference *per se;* it does so because that reference has a legal *effect.* Thus if the nature of ERISA pre-emption were state laws' impermissible "references to" ERISA, the Supreme Court would not have needed to include in the definition of "relates to" those laws that have a "connection with" ERISA plans. Consequently, the broadened definition reflects the Court's con-

clusion that Congress' concern was with state laws that have an effect on ERISA plans.

Granted, most state statutes that "refer to" ERISA plans do have an effect, for that would ordinarily be the intent of the drafters when they made such a reference. But some statutes that refer to covered plans do not have an effect on covered plans, and others have only a tenuous, remote, or peripheral effect. Both of these types of state laws fall outside the scope of ERISA pre-emption. Other statutes do not refer to ERISA but nonetheless have an effect on a covered plan; these are pre-empted because they have more than a tenuous, remote, or peripheral effect. What unites the "refers to" and "connection with" definitions of "relates to" then is that both were crafted to get at statutes that have an effect on ERISA plans. Consequently, statutes that refer to ERISA, but have no effect on a covered plan, are not within the scope of the definition of relates to and, as such, are not pre-empted.

We find further support for our belief that "refer to" cases relate to ERISA plans because of their effect, not their reference, in *Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), a case the Supreme Court cited in its most recent ERISA pre-emption case. *See New York Blue Cross,* —— U.S. at ——, 115 S.Ct. at 1680. In *Mackey,* the Court set forth its view of the purpose behind the "refers to" branch:

> On several occasions since our decision in *Shaw,* we have reaffirmed this rule [that a law relates to a plan if it has a connection with or reference to such a plan], concluding that state laws which make "reference to" ERISA plans are laws that "relate to" those plans within the meaning of § 514(a). In fact, we have virtually taken it for granted that state laws which are "specifically designed to affect employee benefit plans" are pre-empted under § 514(a).

*Mackey,* 486 U.S. at 829, 108 S.Ct. at 2185 (citations omitted). In this passage, the second sentence sheds light on the first: the Court views "refers to" cases as those in which the state legislature passed a statute "specifically designed to affect" a covered plan. Thus statutes that refer to ERISA

plans are struck down not because of the reference but because of their intended effect. Moreover, by noting that "it has virtually taken it for granted," the Court in effect indicates that there is no *per se* rule: by noting that a statute that is specifically designed to affect an ERISA plan is almost always pre-empted, it is acknowledging that there may be situations in which a statute with that goal still might not be pre-empted. If there may be some statutes whose drafters intend to specifically affect ERISA plans but which are still not pre-empted, then *a fortiori* a statute that refers to a covered plan but does not attempt to affect such a plan should not be pre-empted.

Consequently, we are not persuaded that the Supreme Court's treatment of *Shaw* in *Greater Washington* evinces its intent to limit the *Shaw* exception to "connection with" cases. Such a reading ignores the underlying purpose of ERISA pre-emption, which is to prevent impermissible effects, not references.

### C

Finally, we must consider whether the majority inferentially adopted what Justice Stevens's dissent in *Greater Washington* described to be the far reaches of the holding:

> If I understand the Court's reasoning today, a state statute that merely announced that basic rule of damages law [that employees who lose their job by reason of wrongful discharge or negligent infliction of physical injury may recover damages for the entire loss of earnings, including the loss of fringe benefits like health insurance] would be preempted by ERISA if it "specifically refers" to each component of the damages calculation.

506 U.S. at 133–34, 113 S.Ct. at 585 (Stevens, J., dissenting); *see also id.* at 137–38, 113 S.Ct. at 587 (Stevens, J., dissenting) ("In my opinion, a State law's mere reference to an ERISA plan is an insufficient reason for concluding that it is preempted. . . ."). Were we to accept Justice Stevens's reading of the majority opinion, reference alone, despite the absence of any effect, would be enough to warrant pre-emption. We acknowledge that the majority took no steps to convince Jus-

tice Stevens that his interpretation was incorrect or otherwise engage his dissent, unless the *Shaw* footnote can be considered a response.

Nevertheless, we decline to in effect adopt Justice Stevens's interpretation of the majority opinion. A *per se* rule for pre-emption based on mere reference would effect such a huge change in ERISA pre-emption doctrine, and have such a massive and indiscriminate impact on state laws throughout the nation, that in the interest of federalism we would expect a clearer statement from the Court before embarking on this path. In *Thiokol*, Judge Hillman found 432 state laws that use the words ERISA or Employee Retirement Income Security Act; as he noted, many more contain language describing pension or health benefit plans that "refer to" ERISA without using the word ERISA. If mere reference alone, without any impermissible effect on a covered plan, is enough to pre-empt a state law, then all these laws are pre-empted. Such a rule would lead to patently absurd results. As the Third Circuit noted, such a rule would mean that a state law providing that "No employer, including an ERISA plan, shall discriminate on the basis of race or gender" would be pre-empted. *See United Wire, Metal and Machine Health and Welfare Fund v. Morristown Memorial Hosp.*, 995 F.2d 1179, 1192 n. 6 (3rd Cir. 1993). A final example suffices to show that there must necessarily be an analysis of a state law's effect and that mere reference is not enough: under a *per se* reference test that did not concern itself with whether a law had only a tenuous, remote, or peripheral effect or even had no effect, ERISA would pre-empt a non-binding resolution passed by a town board declaring February 1996 as "ERISA Awareness Month." Surely Congress did not intend such a broad and unreasonable pre-emption doctrine.

We believe that a reading of "relates to" which totally obviates the need to examine the effect of state laws that refer to a covered plan misconstrues Congress's intent. If the Supreme Court nevertheless intended to so interpret "relates to," it would do so expressly. It would use language like that

which appeared in footnote thirteen of the D.C. Circuit's *Greater Washington* opinion:

> We agree with the Fifth Circuit that the "*Shaw* 'exception'—that ERISA does not preempt state laws which affect benefit plans in a tenuous or peripheral manner— applies only to laws of general application; it does not protect state laws which specifically refer to ERISA benefit plans."

*Greater Wash. Bd. of Trade v. District of Columbia,* 948 F.2d 1317, 1322 n. 13 (D.C.Cir.1991), *aff'd,* 506 U.S. 125, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992), quoting *In re Dyke,* 943 F.2d 1435, 1448 (5th Cir.1991). Yet instead of adopting this narrow interpretation when it had the appeal of the D.C. Circuit's *Greater Washington* opinion before it on review, the Supreme Court restated its holding that "Pre-emption does not occur, however, if the state law has only a 'tenuous, remote, or peripheral' connection with covered plans...." *Greater Washington,* 506 U.S. at 130, 113 S.Ct. at 583.

Put simply, if the Supreme Court intends to abandon an analysis based on effect, we believe it will do so in affirmative terms rather than remaining silent in the face of a dissent. *Cf. First Options of Chicago, Inc. v. Kaplan,* ⎯ U.S. ⎯, ⎯, 115 S.Ct. 1920, 1925, 131 L.Ed.2d 985 (1995) ("[O]ne can understand why courts might hesitate to interpret silence or ambiguity....").

## IV

■ Next we turn to 95–1171, AKZO's challenge to Mich.Comp.Laws Ann. § 205.27a(6) (West Supp.1995), which requires taxpayers seeking tax refunds on the grounds that the state tax law violates the federal constitution to file such claims within 90 days after the date set for filing a return. AKZO argues that § 205.27a(6) is pre-empt-ed by ERISA and that it violates due process and equal protection. We find that ERISA does not pre-empt this statute of limitation.

Because § 205.27a(6) makes no specific reference to an ERISA plan, we must consider whether it has any connection with a plan that has more than a tenuous, remote, or peripheral effect. The Supreme Court's holding in *Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) controls. *Mackey* held that ERISA does not pre-empt a state law allowing garnishment of ERISA plans. *Id.* at 841, 108 S.Ct. at 2191 ("ERISA does not forbid garnishment of an ERISA welfare benefit plan, even where the purpose is to collect judgments against plan participants."). Here, the statute of limitations applies to all types of tax challenges based on federal law or the federal constitution. Like the garnishment statute in *Mackey,* the statute of limitations is likely to have some effect on ERISA-based challenges to Michigan tax laws. But any effect will be at most remote or peripheral. Thus, we find that § 205.27a(6) is not pre-empted by ERISA.

■ The District Court went on to hold that § 205.27a(6) does not violate the federal constitutional guarantees of due process and equal protection.[6] The Court erred in reaching this issue, for it lacked jurisdiction to consider a declaratory judgment action in which the relief requested would have necessitated striking down a state statute for violating the United States Constitution. *Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* 454 U.S. 100, 103, 102 S.Ct. 177, 179–80, 70 L.Ed.2d 271 (1981), citing *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943). Such relief must be sought in Michigan courts. *See* 28 U.S.C. § 1341.

---

**6.** In an unpublished disposition, Judge Hillman upheld a Magistrate's order denying Thiokol's motion to amend its complaint a third time with respect to claims that this statute of limitations was pre-empted by ERISA and violates due process and equal protection. The Court was correct to deny Thiokol's motion to include the constitutional claims, for Courts may deny motions to amend where the amended complaint would not survive a motion to dismiss: because federal courts lack jurisdiction to grant declara-tory relief striking down state tax laws as unconstitutional, an amendment to the complaint including constitutional challenges would not have survived a motion to dismiss for lack of jurisdiction. However, the District Court erred in denying Thiokol's motion to add its claim that the statute of limitations was pre-empted by ERISA. In view of our holding that the statute of limitations is not pre-empted, however, there is no necessity for a remand on that issue.

## V

For the reasons stated above, we **RE-VERSE** and **REMAND** in 95–1116 the District Court's grant of summary judgment in favor of AKZO on the grounds that Michigan's Single Business Tax is pre-empted. Likewise, we **AFFIRM** in 94–1903 the District Court's grant of summary judgment finding that ERISA does not pre-empt Michigan's Single Business Tax.

We **AFFIRM**, in 95–1171, that Court's holding that Michigan's 90–day statute of limitations for constitutional challenges to its tax laws is not pre-empted by ERISA. But we **REVERSE** its holding that the statute of limitation survives due process and equal protection challenges, for it lacked jurisdiction to decide those issues.